Larry Ray & Linda HANSON,
Plaintiffs–Appellants,

v.

PARKSIDE SURGERY CENTER; Peter N. Arrowsmith, M.D.; Peter N. Arrowsmith, M.D., P.C.; and Arrowsmith Eye Institute, Defendants–Appellees.

No. 86–6089.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 9, 1987.

Decided April 14, 1989.

Rehearing and Rehearing En Banc Denied June 6, 1989.

---

Steven A. Riley (argued), Nashville, Tenn., for plaintiffs-appellants.

W.A. Moody, Michael Castellarin, Noel F. Stahl, W. Gregory Miller (argued), and David L. Steed, Nashville, Tenn., for defendants-appellees.

Before ENGEL, Chief Judge *, and MERRITT and NORRIS, Circuit Judges.

* The Honorable Albert J. Engel assumed the duties of Chief Judge April 1, 1988.

ENGEL, Chief Judge.

Plaintiff Larry Ray Hanson appeals from the judgment of the United States District Court for the Middle District of Tennessee granting defendant Parkside Surgery Center's motion for a directed verdict and from a jury verdict rendered in favor of defendant Peter N. Arrowsmith, M.D. and the remaining defendants. After this appeal was filed, Parkside Surgery settled with Hanson and was dismissed from the case. Hanson's claims with regard to the other defendants remain before us.

Hanson asserts that the district court committed six reversible errors in conducting the trial: (1) seating an eight-member jury, with all eight members deliberating; (2) restricting the testimony of plaintiff's expert, Dr. Denis O'Day; (3) excluding the deposition testimony of Dr. John M. Omahundro, III; (4) disallowing evidence of Dr. Arrowsmith's revised informed consent form; (5) failing to allow plaintiff's counsel to cross-examine Dr. Arrowsmith concerning statements attributed to him contained in a newspaper article; and (6) failing to allow plaintiff's counsel to admit into evidence the informed consent form used by plaintiff's expert.

The most important issue raised by plaintiff, in our judgment, is whether it was reversible error under the circumstances here for the trial court to have submitted the case to the unanimous decision of eight, as contrasted to six, jurors. After reviewing the briefs and record and hearing oral argument, and despite reservations about the manner in which the jury was seated, we reject all of Hanson's claims of error and affirm.

In 1983, Larry Hanson, a resident of Alabama, learned of an experimental/investigative eye surgery called radial keratotomy which reduces nearsightedness by changing the shape of the cornea. The procedure has been done by Dr. Arrowsmith in Nashville, Tennessee since 1981. Mr. Hanson visited Arrowsmith's office in Nashville, spoke with Arrowsmith concerning the procedure, and watched a video tape prepared by Arrowsmith as part of the informed consent process. Mr. Hanson

elected to have the surgery and signed Dr. Arrowsmith's and Parkside Surgery's informed consent forms, but during the anesthesia process (the anesthesia was administered with a sharp-tipped rather than a blunt-tipped needle, a medical decision, the validity of which is also in dispute), Hanson's optic nerve was damaged and he was rendered blind in his left eye.

The Hansons timely filed a medical malpractice suit invoking the diversity jurisdiction of the United States District Court for the Middle District of Tennessee alleging negligence in the anesthesia process. They further alleged that defendants had failed to obtain Hanson's informed consent. The case was tried before a jury, and Tennessee's malpractice statutes were applied. During trial and before the jury began its deliberations, plaintiff Linda Hanson dismissed her claims. A directed verdict subsequently was rendered for Parkside, and the jury returned a verdict for defendant Arrowsmith. Larry Hanson filed a motion for new trial pursuant to Fed.R.Civ.P. 59(a). His motion was denied. Shortly thereafter, he filed a motion for reconsideration of that order. While that motion was pending, he also filed a notice of appeal. Following a change in counsel, Hanson filed a motion to stay all proceedings pending a determination of the effectiveness of the notice of appeal or, in the alternative to file a supplemental brief. The trial court decided that it would not rule on the plaintiff's motion to reconsider pending the outcome of the issue in this court.

On January 23, 1987, pursuant to Fed.R. App.P. 10, defendant Arrowsmith filed a motion in the district court for approval of a statement on the evidence or proceedings and for correction of the record with regard to the contents of an unreported pretrial meeting held in chambers during which the manner of selection and the size of the jury was discussed. Over plaintiff's motion in opposition, the district court granted Arrowsmith's motion and approved his statement on the evidence or proceedings. The statement set out the jury selection process as it was described by the

district court to all counsel at the pre-trial conference:

> twenty jurors would be brought to the courtroom and placed in the jury box and in a row of seats in front of the box. During voir dire plaintiffs would be allowed six peremptory challenges and the defendants would be allowed six peremptory challenges between them. After all twelve challenges had been exercised a jury of eight persons would be sworn and seated and no alternate jurors would be specifically designated. The case would then be tried to all eight jurors. At the end of the trial if both sides agreed to excuse two of the jurors then each side would select one juror who would be dismissed and the remaining jury of six persons would retire to deliberate. If both sides did not agree to excuse two jurors at the end of the trial, then the case would be submitted to a jury of eight.[1]

The statement also indicated that all counsel had an opportunity to ask the district court questions about the procedure and that they expressed their understanding of and agreement "with the manner of jury selection and the number of jurors who would hear the case."[2] The plaintiff continues to challenge the propriety of the district court's decision to approve the statement and to question its accuracy.

■ Plaintiff first claims that the district court committed reversible error by submitting the case for deliberation, over plaintiff's objection, to an eight-member jury in violation of Fed.R.Civ.P. 47(b) and Rule 12(j) of the Local Rules of the Court for the Middle District of Tennessee. In relevant part, Rule 47(b) provides "[a]n alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict." Local Rule 12(j) provides "[a]ll civil juries shall be composed of six (6) persons, excluding alternates." Relying primarily on *Kuykendall v. Southern Railway, supra,* plaintiff argues that both of these rules are "mandatory," and therefore absent a valid stipulation by the parties, as provided for in Fed.R.Civ.P. 48, for an eight-member jury, the district court's failure to discharge two jurors as alternates in this case is grounds for reversal.[3] *See also DeBenedetto v. Goodyear Tire & Rubber Co.,* 754 F.2d 512 (4th Cir.1985). Defendants counter by arguing that because no substantial right was affected, the claimed violations of Rule 47(b) and Local Rule 12(j) in this case do not merit a new trial, and moreover, because plaintiff agreed to the procedure followed at trial, albeit during a conference that took place off the record, he waived the right to object to any violation of either of the rules. We conclude that Fed.R.Civ.P. 48 does not preclude a stipulation such as that found by the district court.[4] Like-

---

1. Since no jurors were excused we need not decide whether permitting additional strikes after each side has presented its case and observed the reaction of individual jurors would be appropriate even by stipulation. However, it has been suggested that the practice appears to be "subversive of the truth-seeking purpose of the jury process." *Kuykendall v. Southern Railway,* 652 F.2d 391, 392 (4th Cir.1981). No claim is made that any juror was subject to challenge for cause.

2. No express reason is given for this agreement, nor is any potential or actual prejudice suggested. The most logical explanation is that it simply made no difference to the parties. When jurors have sat together in hearing a case they often develop friendships and a natural desire to see it through to the end. Consequently jurors who are excused before the rest retire are often disappointed, and even frustrated by a feeling that their participation turned out to be useless in the end. Counsel, sensing this, may

be reluctant to risk the displeasure of the jury by suggesting a reduction in the size, especially when there is no perceived advantage to their clients in doing so.

3. Fed.R.Civ.P. 48 provides:
   The parties may stipulate that the jury shall consist of any number less than twelve or that a verdict or a finding of a stated majority of the jurors shall be taken as a verdict or finding of the jury.

4. In reaching this decision we reject plaintiff's overly restrictive reading of Fed.R.App.P. 10 and find the district court's statement on the evidence or proceedings is properly before us pursuant to Fed.R.App.P. 10(e). *Cf. Cox v. General Electric Co.,* 302 F.2d 389 (6th Cir.1962) (applying predecessor to Rule 10(e)); *S & E Shipping Corp. v. Chesapeake & Ohio Railway,* 678 F.2d 636 (6th Cir.1982); *United States v. Page,* 661 F.2d 1080 (5th Cir.1981). *See generally* 9 Moore, Ward & Lucas, *Moore's Federal Practice* ¶¶ 210.06[3], 210.08 (2d ed. 1988).

wise we find that the local rule does not preclude waiver by a stipulation entered into pursuant to Rule 48.

In *Kuykendall v. Southern Railway, supra,* as in this case, the trial court empaneled an eight-member jury without designating two members as alternates. After closing arguments, the court announced, out of the presence of the jury, that the case would be submitted to the eight jurors, all of whom would participate in the deliberations. The defendants objected, relying on a local rule requiring the trial judge to submit the case to a jury of either six or twelve, but the objection was overruled. Because one of the eight jurors was excused for illness, the case was eventually submitted to the remaining seven. Borrowing from its cases addressing similar situations under Fed.R.Crim.P. 24(c), the analogous rule of criminal procedure, the court of appeals adopted a "per se rule of reversal" for civil cases where an alternate juror is allowed to retire with the jury in violation of Rule 47(b). It therefore reversed and remanded the case for a new trial. *Id.* at 393. Although no alternates had been designated, the Fourth Circuit reasoned that since there was no "written" or "clearly recorded" stipulation pursuant to Rule 48 the jury must be treated as one of six regular jurors and two alternates. *Id.* at 392–93. The effect of this designation was to bring the jury within the mandate of Rule 47(b).

While the Fourth Circuit was within its superintending authority in holding that a departure from the authorized jury size in civil cases is permitted only "by a written stipulation or one clearly recorded," *DeBenedetto,* 754 F.2d at 514; *Kuykendall,* 652 F.2d at 392, we decline to adopt such a per se rule here. Moreover, assuming that Rule 47(b) and that Local Rule 12(j) may have been violated, we still believe such violations are subject to the application of the harmless error standards of Fed.R.Civ. P. 61. *Cf. United States v. Levesque,* 681 F.2d 75, 80 (1st Cir.1982) (violation of Fed. R.Crim.P. 24 warrants reversal only where irregularity affects substantial rights).

The Supreme Court has noted that, for purposes of the seventh amendment,

what is required for a jury is "a number large enough to facilitate group deliberation combined with a likelihood of obtaining a representative cross-section of the community." *Colgrove v. Battin,* 413 U.S. 149, 160 n. 16, 93 S.Ct. 2448, 2454 n. 16, 37 L.Ed.2d 522 (1973). In *Colgrove,* the Court rejected a seventh amendment challenge to a local rule of the United States District Court for the District of Montana which provided for trial of all civil cases before a jury of six instead of the traditional twelve. In reaching its decision, the Court relied upon its prior decision in *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) (upholding, against a sixth and fourteenth amendment challenge, the use of a six-member jury in a state criminal trial), and stated:

> Keeping in mind the purpose of a jury trial in criminal cases to prevent government oppression, ... and, in criminal and civil cases, to assure a fair and equitable resolution of factual issues, ... the question comes down to whether jury performance is a function of jury size. In *Williams,* we rejected the notion that "the reliability of the jury as a factfinder ... [is] a function of its size," ... and nothing has been suggested to lead us to alter that conclusion.

413 U.S. at 157, 93 S.Ct. at 2453 (citations omitted).

Later, in *Ballew v. Georgia,* 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), Justice Blackmun, joined by Justice Stevens, commented upon a series of studies considering the efficacy of juries composed of fewer than twelve jurors and observed:

> the purpose and functioning of the jury in a criminal trial is seriously impaired, and to a constitutional degree, by a reduction in size to below six members. We readily admit that we do not pretend to discern a clear line between six members and five. But the assembled data raise substantial doubt about the reliability and appropriate representation of panels smaller than six. Because of the fundamental importance of the jury trial to the American system of criminal justice, any further reduction that promotes inaccurate and possibly biased decision-

making, that causes untoward differences in verdicts, and that prevents juries from truly representing their communities, attains constitutional significance.

*Id.* at 239, 98 S.Ct. at 1038–39. For differing reasons, the remaining seven justices concurred in Justice Blackmun's conclusion that a five person jury in a criminal trial does not satisfy the jury trial guarantees of the sixth and fourteenth amendments. *Id.* at 245–46, 98 S.Ct. at 1041–42.

*Ballew,* of course involved a criminal trial. However, results of the studies reviewed therein suggest at least that a civil jury composed of fewer than six members may also run afoul of the seventh amendment requirements set out in *Colgrove,* but we need not resolve that question here. On the contrary, the studies cited by Justice Blackmun in *Ballew* suggest, if anything, *increased* reliability where juries, such as the one involved in this case, consist of more than six jurors. *See Ballew,* 435 U.S. at 232–39, 98 S.Ct. at 1035–39. Since plaintiff makes no claim that the jury was wrongfully influenced in any way during its deliberations or that the two "extra" jurors were incompetent or unqualified, we must conclude that no right was violated and therefore that no reversible error occurred despite the departure from authorized jury size.

We also find that none of plaintiff's five other claims of error merits a new trial.

■ Plaintiff argues that the district court erred by restricting his expert witness' testimony on the issue of informed consent. As a result, plaintiff claims, his expert was not permitted to testify that Dr. Arrowsmith's video tape, prepared as part of the informed consent process and viewed by plaintiff, improperly minimized the risks involved in the procedure in order to induce plaintiff's consent. The district court permitted Dr. O'Day to state what information he believed Dr. Arrowsmith had failed to include in the video tape, but did not permit him to testify concerning his belief that the tape presented the risks involved in the procedure in a "persuasive" manner. Basing its decision, in part, on its understanding of Tennessee law and its belief that Dr. O'Day's area of expertise did not include "communications," the district court concluded that Dr. O'Day's testimony concerning the manner in which the information was presented would not assist the jury, which could see and evaluate the video tape on its own. Since the decision to allow expert testimony, pursuant to Fed.R. Evid. 702, is largely within the discretion of the trial court, we will disturb the trial court's ruling only if it is clearly erroneous or an abuse of discretion. *See, e.g., Davis v. Combustion Engineering, Inc.,* 742 F.2d 916, 919 (6th Cir.1984). *See also Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1208 (6th Cir.1984) (four part test must be met to uphold the admission of expert testimony). Applying these standards we hold that the district court did not abuse its discretion in this case.[5]

■ Plaintiff next argues that the district court erred in denying his request to admit the deposition testimony of Dr. John M. Omahundro, III, pursuant to Fed.R. Civ.P. 32(a)(3)(D). On the facts of this case, especially in light of evidence that plaintiff's inability to procure the witness' attendance at trial was at least in part due to plaintiff's own lack of diligence, we do not find that the district court abused its discretion.

■ Plaintiff also raises the claim that the district court erred in disallowing evidence of Dr. Arrowsmith's revised informed consent form. Dr. Arrowsmith began using the form approximately two years after plaintiff's surgery. We find no error in the district court's ruling pursuant to Fed.R.Evid. 407 because the record simply does not support plaintiff's assertion that, by Dr. Arrowsmith's own admission,

---

5. After oral argument was heard in this case, our court addressed but did not decide the question of the relationship of Fed.R.Evid. 601 ("General Rule of Competency") and Fed.R. Evid. 702 ("Testimony by Experts") where a state's statute provides that certain individuals are incompetent to testify as experts. *Ward v.* *United States,* 838 F.2d 182, 188–89 (6th Cir. 1988) (applying Tennessee malpractice statutes in action under Federal Tort Claims Act). Because neither party has raised the issue of Dr. O'Day's competency as an expert, we again decline to consider that question.

the revised consent form is not a subsequent remedial measure. *Cf. Bauman v. Volkswagenwerk A.G.*, 621 F.2d 230, 232–33 (6th Cir.1980).

■ Plaintiff next argues that the district court erred in not allowing plaintiff's counsel to cross-examine Dr. Arrowsmith concerning statements attributed to him contained in a newspaper article. We disagree. After reviewing the record in this case we believe the district court acted within its discretion when it excluded this unfairly prejudicial and misleading evidence pursuant to Fed.R.Evid. 403. *Cf. All American Life and Casualty Co. v. Oceanic Trade Alliance Council International Inc.*, 756 F.2d 474, 479 (6th Cir. 1985).

■ Finally, plaintiff argues that the district court erred by failing to allow plaintiff's counsel to admit into evidence the informed consent form used by plaintiff's expert. The form was prepared by Dr. O'Day to inform patients of the risks involved in a different type of eye surgery. We again find that the district court did not abuse its discretion.

Accordingly, the judgment of the district court is AFFIRMED.