**Francisco CABRAL and Maria Cabral, Plaintiffs,**

**v.**

**William SULLIVAN and Donald Breault, Individually and in their official capacities as police officers of the City of Fall River, Defendants.**

**Civ. A. No. 86–0259–Y.**

United States District Court,
D. Massachusetts.

Feb. 19, 1991.

Henry F. Owens, III, Owens & Associated, Boston, Mass., for plaintiffs.

Paul Desmarais, Fall River, Mass., George Deptula, Berlin, Clarey, Deptula & Levee, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiffs Francisco and Maria Cabral here move for a new trial following a jury verdict for the defendants in their civil rights action against police officers William Sullivan and Donald Breault. The Cabrals' counsel raises but a single ground in the motion for a new trial, *viz.* that this Court knowingly violated Local Rule 48.1 [1] and allowed jurors and alternates to deliberate together without the agreement of the parties. Even in the absence of any demonstrable prejudice, plaintiffs' counsel claims that the Cabrals are entitled to a new trial.

---

**1.** At the time of the trial itself, this Rule was numbered Local Rule 23. The Rules have since been renumbered and, as there is no substantive change in the Rule, the present numbering is followed for clarity.

## I. Factual Background.

Because the factual allegations of counsel are correct, it is important to limn the factual background in some detail to understand how the Local Rule came to be violated.

Local Rule 48.1 provides that:

In all cases, the jury shall consist of six (6) persons, unless before a verdict is returned the parties or their respective counsel stipulate in writing or on the record with the approval of the court that a verdict may be returned by a jury of fewer or more than six (6) persons.

The Rules of Court Committee of the Civil Litigation Section of the Massachusetts Bar Association describes the local rules requirement of a written or recorded stipulation as "the built-in safeguard of requiring agreement of parties to reduce or increase the number of jurors." Comment to [Predecessor] Local Rule 23 in Massachusetts Rules of Court 757 (West 1990).

It is the routine practice of this session of the court to empanel ten jurors in each civil case, complying with Local Rule 48.1 by securing the agreement of counsel at the outset of the case to permit the four alternates to deliberate with the standard six-person jury. Routinely, the Court broaches this subject at the final pretrial conference held in the lobby, usually off the record, just before jury empanelment and then confirms the agreement of counsel on the record in court at the time the first round of preemptory challenges is to be exercised during voir dire. Thus, in this session of the court, ten jurors are empaneled on every civil case. If counsel agree, all ten deliberate at the close of the case. If any counsel demurs, the last four jurors are tolled off as alternates once the case is committed to the jury and they stand in reserve while a six-person jury deliberates to a verdict. That is the general practice in this session and it conforms to the requirements of Local Rule 48.1. *See generally* W. Schwarzer, Reforming Jury Trials, 132 F.R.D. 575, 581–82 (1991).

In this case, to ensure maximum utilization of the jury pool, the Court proceeded to empanel four juries of ten persons each in the course of a single morning. Three juries were stacked up to try cases seriatim in this session and the fourth was sent to try a case before the Honorable Bailey Aldrich, Senior Circuit Judge for the First Circuit, who graciously devotes a significant amount of time to trying jury cases in this District.

In the instant case, defense counsel had inquired of the Deputy Courtroom Clerk, Katherine Hart Duffey, Esq., concerning the Court's practices during empanelment. Ms. Duffey informed counsel of the Court's practice of empaneling ten jurors and having all the jurors deliberate. Plaintiffs' counsel made no such inquiry, assuming that the Court would select the alternates just prior to the commencement of deliberations. Following an off the record final pretrial conference, empanelment proceeded without incident and the trial commenced. The trial lasted seven days. As to the conduct of William Sullivan the evidence was sharply disputed, presenting a quintessential jury issue. As to Donald Breault, it was the Cabrals' theory that he failed to take reasonable steps to protect Francisco Cabral from William Sullivan's use of excessive force.[2] While there was sufficient evidence to send this issue to the jury, the case against Breault was thin at best.

At the close of the trial, this Court charged the jury without making any reference to the selection of alternates or their role once deliberations commenced. Plaintiffs' counsel took no objection to the charge in this regard. Thereupon all ten jurors were sent to the jury room to commence their deliberations. Just as soon as the door to the jury room had closed behind them, Plaintiffs' counsel inquired concerning the Court's intent to select four alternates.

Believing in good faith that the matter had been covered during the final pretrial

---

**2.** Such nonfeasance supports liability under 42 U.S.C. § 1983. *Gaudreault v. Salem,* 923 F.2d 203, 207 n. 3 (1st Cir.1990); *Byrd v. Brishke,* 466 F.2d 6, 10–11 (7th Cir.1972); *Hathaway v. Stone,* 687 F.Supp. 708, 711–12 (D.Mass.1988).

conference and confirmed on the record during empanelment, I said that all counsel had agreed to a jury of ten persons. Plaintiffs' counsel disagreed. Defense counsel, having understood the Court's practice from private inquiry of the Courtroom Deputy Clerk, could not recall whether the matter had been bruited with counsel on the record or not. Likewise, the Courtroom Deputy Clerk could not say whether or not the express agreement of counsel had been secured in this particular case. Since I believed that I had followed my normal practice and that, in any event, no prejudice would inure to any party from the deliberations of a ten person jury, I stood my ground, overruled the objection of Plaintiffs' counsel, and recessed to await the jury verdict. This recess was taken at approximately 12:30 p.m.

At 1:00 p.m. I left the courthouse to have lunch with Judge Aldrich where I learned, among other things, that the jury which I had empaneled for him suffered from the same alleged infirmity as Plaintiffs' counsel had raised in the instant case. That is, counsel before Judge Aldrich had informed him that there was no agreement that the ten person jury I had empaneled for him might all deliberate together. Judge Aldrich promptly separated out four alternates and permitted six jurors to deliberate. This was interesting news indeed; it set me thinking that perhaps in the press of empaneling four juries I had not secured the agreement of counsel to allow all ten jurors to deliberate.

My impressions were confirmed when I returned to the courthouse. Donald Womack, the Court Reporter in this session, on his own initiative had reviewed his stenographic notes of the empanelment and explained that, if the parties had agreed, it could have only have been during the off the record lobby conference as there was no express agreement on the record. What's more, the Courtroom Deputy Clerk on her own initiative had delayed the jury deliberations until my return from lunch so that there was still time to separate out four alternates. Despite my serendipitous lunch with Judge Aldrich and the superb staff work which enabled me to correct the

error, regrettably I concluded that no prejudice could inure to any party and gave directions that the deliberations were to commence. The Defendants' verdict with which the Cabrals take issue was the result.

## II. What Now?

█ At the outset, it is important to note that no responsibility for what has happened attaches to either counsel. While it might have been the better practice for the Plaintiffs' counsel to have inquired of the Clerk as to the Court's practices in empaneling a jury, it is the responsibility of the Court to establish an appropriate record of compliance with Local Rule 48.1. Moreover, counsel for all parties in this case are experienced federal practitioners and had every right to expect compliance with the Local Rules. Nor can Plaintiffs' counsel be faulted for not objecting to the omission of references to alternates in the Court's charge. Counsel could reasonably expect that the Court would separate the alternates at the very end of the trial proceeding. *See United States v. Rauch*, 574 F.2d 706, 707 (2d Cir.1978), *cert. denied*, 439 U.S. 832, 99 S.Ct. 110, 58 L.Ed.2d 126 *cert. denied*, 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); Manual for Complex Litigation Second 142 n. 45 (1986); W. Schwarzer, Reforming Jury Trials at 582. In fact, Plaintiffs' counsel promptly objected just as soon as it became evident that the Court was sending all ten jurors into the jury room. Likewise, it is important to note that the conduct of defense counsel can in no way be characterized by overreaching or unfairly taking advantage of the Court's mistake. Defense counsel, familiar with and content with the Court's practice of seating ten jurors, genuinely could not remember whether an agreement between counsel had been made a matter of record and so reported to the Court upon its inquiry.

The issue is thus starkly presented. The Court has made a mistake. Indeed, it is a knowing mistake albeit based upon a good faith belief that no prejudice would inure to any party from the violation of the Local

Rule. In light of this error, the easiest course would be to order a new trial.[3] There is no way that any party can demonstrate the existence of prejudice by virtue of having an improper number of jurors deliberate.[4]

This Court recognizes that as "litigants may believe legitimately that the size of a jury can affect the outcome ... [, i]t is important to the litigants views of the fairness of the system that the jury size be determined before the jury retires or the verdict is announced." *Equal Employment Opportunity Commission v. Delaware*, 865 F.2d 1408, 1420 n. 17 (3d Cir. 1988). Contrary to this Court's supposition, however, at least one Circuit has held that a per se rule of reversal is appropriate in civil cases where alternate jurors are allowed to retire with the deliberating jury. *Kuykendall v. Southern Railway Co.*, 652 F.2d 391, 393 (4th Cir.1981) (Haynsworth, J.). *But see Hanson v. Parkside Surgery Center*, 872 F.2d 745, 749 (6th Cir.1989), *cert. denied sub nom., Hanson v. Arrowsmith*, —— U.S. ——, 110 S.Ct. 349, 107 L.Ed.2d 337 (1989), where the Sixth Circuit *in dicta* declines to adopt the *per se* rule of *Kuykendall*, opting instead to test the violation presented there—and in this case—against the harmless error standards of Fed.R.Civ.P. 61.

Despite my embarrassment at having committed what I now believe to have been clear error, there are other concerns which warrant careful scrutiny. A litigant is entitled to a fair trial, not a perfect one. *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593, 605 (1953). Moreover, trials are expensive, the marginal cost to the taxpayers of a single day of trial in the United States District Courts approximating $15,000. *In re Acushnet River & New Bedford Harbor*, 712 F.Supp. 1019, 1030 n. 19 (D.Mass.1989); *Chappee v. Commonwealth of Massachusetts*, 659 F.Supp. 1220, 1226 n. 9 (D.Mass. 1987), *reversed on other grounds sub nom., Chappee v. Vose*, 843 F.2d 25 (1st Cir.1988). Ought this entire case be retried simply because ten impartial jurors came to a unanimous verdict against the Cabrals rather than the six to which they were entitled under the Local Rule?

While a bare majority of the Supreme Court has upheld six person juries as constitutional, *Colgrove v. Battin*, 413 U.S. 149, 163–64, 93 S.Ct. 2448, 2455–56, 37 L.Ed.2d 522, 532–33 (1973), the studies reviewed by Mr. Justice Blackman in *Ballew v. Georgia*, 435 U.S. 223, 232–39, 98 S.Ct. 1029, 1035–39, 55 L.Ed.2d 234 (1978) "suggest ... *increased* reliability where juries ... consist of more than six jurors." *Hanson v. Parkside Surgery Center*, 872 F.2d at 750 (emphasis in original). Moreover, a recent National Center for State Courts study has concluded that smaller juries do not save money and are less likely to be made up of minority jurors. 4 Inside Litigation 6 (June, 1990). Perhaps with this in mind, the United States Judicial Conference has adopted and recommended to the Supreme Court an amendment to the Federal Rules of Civil Procedure which would adopt this Court's practice precisely and would permit a presiding judge to send out all the empaneled jurors to deliberate even though their number exceeds the minimum number required to return a verdict. *See* Report of the Proceedings of the Judicial Conference of the United States 102 (September 12, 1990).[5] In light of these developments, this Court has the gravest doubts whether a

---

**3.** After all, as Winston Churchill advises, "There is no need to be [afraid to eat your words]. I have eaten a great many of mine in my time and on the whole I have found them a most wholesome diet." K. Halle ed. *The Irrepressible Churchill* 145 (1966).

**4.** Plaintiffs' counsel claims discrete prejudice from bunching his preemptory challenges so that they were exercised primarily against the first six jurors chosen. There is nothing to this argument, as counsel fails to point out either generally or with particularity how his strategy with respect to the exercise of preemptory challenges would have actually altered had he known of the Court's practice. Indeed, it appears from colloquy with counsel that he expected the Court to follow the Massachusetts state practice and choose the alternates at random at the close of the case. The Court concludes that this argument is an afterthought.

**5.** The proposal, transmitted to the Chief Justice and Justices of the Supreme Court on November 19, 1990 will, if adopted, abolish Fed.R. Civ.P. 47 providing for alternate jurors, and

retrial is appropriate, especially since the trial itself was well conducted on both sides, involving significant factual disputes but no remarkable issues of law. Even the factual disputes, however, focused primarily on what transpired as between Francisco Cabral and William Sullivan. Donald Breault, while present, played but a slight role in the events, whichever version was to be accepted by a jury.[6]

▇ Balancing the competing considerations set out above, were the issue one

which addressed the discretion of the Court, *compare Hendricks & Associates, Inc. v. Daewoo Corp.*, 923 F.2d 209, 217 (1st Cir.1991), I would exercise my discretion to deny the motion for a new trial. This Court regretfully concludes as matter of law, however, that, following the *Hanson* modification of the *Kuykendall per se* rule, absent the "fair assurance"[7] or "high probability"[8] that the violation of the Local Rule did not affect the judgment, a *per se* rule of reversal is the appropriate standard

substitute the following rule and comment for the present Rule 48:

Rule 48.

The court shall seat a jury of not fewer than six and not more than twelve members and all jurors shall participate in the verdict unless excused from service by the court pursuant to Rule 47(c). Unless the parties otherwise stipulate, (1) the verdict shall be unanimous and (2) no verdict shall be taken from a jury reduced in size to fewer than six members.

COMMITTEE NOTE

The former rule was rendered obsolete by the adoption in many districts of local rules establishing six as the standard size for a civil jury.

It appears that the minimum size of a jury consistent with the Seventh Amendment is six. *Cf. Ballew v. Georgia*, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978) (holding that a conviction based on a jury of less than six is a denial of due process of law). If the parties agree to trial before a smaller jury, a verdict can be taken, but the parties should not other than in exceptional circumstances be encouraged to waive the right to a jury of six, not only because of the constitutional stature of the right, but also because smaller juries are more erratic and less effective in serving to distribute responsibility for the exercise of judicial power.

Because the institution of the alternate juror has been abolished by the proposed revision of Rule 47, it will ordinarily be prudent and necessary, in order to provide for sickness or disability among jurors, to seat more than six jurors. The use of jurors in excess of six increases the representativeness of the jury and harms no interest of a party. *Ray v. Parkside Surgery Center*, 13 F.R.Serv. 585 (6th cir.1989).

If the court takes the precaution of seating a jury larger than six, an illness occurring during the deliberation period wall not result in a mistrial, as it did formerly, because all seated jurors will participate in the verdict and a sufficient number will remain to render a unanimous verdict of six or more.

In exceptional circumstances, as where a jury suffers depletions during trial and delib-

eration that are greater than can reasonably be expected, the parties may agree to be bound by a verdict rendered by fewer than six jurors. The court should not, however, rely upon the availability of such an agreement, for the use of juries smaller than six is problematic for reasons fully explained in *Ballew v. Georgia*, supra.

6. In fact, after the decision in *Gaudreault v. Salem, supra*, it appears that a directed verdict ought have been granted against the Cabrals as to all aspects of the claim against Breault save for that part of the claim involving Breault's alleged failure to ameliorate Francisco Cabral's alleged wrongful imprisonment. *Id.* 923 F.2d at 206–07 & n. 3.

7. In *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557, 1566–67 (1946), the Court put it this way:

If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. But if one cannot say, with *fair assurance*, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Id.* at 764–65, 66 S.Ct. at 1248 (footnote and citation omitted) (emphasis added). *United States v. Maguire*, 918 F.2d 254, 267 (1st Cir. 1990).

8. The First Circuit has equated the "fair assurance" standard of *Kotteakos* with a finding that it is highly probable "that the error did not affect the judgment." *United States v. Maguire, supra* at 267; *United States v. Ladd*, 885 F.2d 954, 957 (1st Cir.1989); *United States v. Hernandez–Bermudez*, 857 F.2d 50, 53 (1st Cir.1988).

to ensure compliance with a Local Rule that implicates such a fundamental matter as jury size. Accordingly, the motion for new trial is granted as to the Cabrals' case against William Sullivan and denied as to the case against Donald Breault. Whatever the impropriety of having ten jurors deliberate, this Court concludes that, given the small role Breault played in these events, any error as to the jury composition was, as to the case against him, harmless beyond a reasonable doubt and would not have affected the outcome.

### III. Interlocutory Appeal.

 Granting the Cabrals a new trial as to William Sullivan is an order which he could not normally appeal. *Allied Chemical Corp. v. Daiflon Inc.*, 449 U.S. 33, 34–35, 101 S.Ct. 188, 189–90, 66 L.Ed.2d 193, 196–97 (1980); *Kerr v. United States District Court*, 426 U.S. 394, 402–03, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725, 732–33 (1976). Likewise, denying the motion for a new trial as to Donald Breault would normally prevent the Cabrals from appealing that part of the order until they had gone through a second trial as against Sullivan alone. *Libby, McNeil and Libby Corp. v. Alaska Industrial Board*, 215 F.2d 781, 782 (9th Cir.1954). Only then could they test the propriety of denying the motion for a new trial as to Breault and, if proved correct on appeal, they would have to bear the burden and expense of a separate trial against him. Fortunately, the flexible provisions of 28 U.S.C. § 1292(b) amply accommodate this situation. The grant or denial of a new trial due to the erroneous inclusion of alternate jurors in the jury deliberations contrary to the Local Rule is a matter of first impression in this Circuit. This Court's order granting the new trial is not an exercise of its discretion but is, rather, a ruling of law adopting in this court the reasoning of the Fourth Circuit's *Kuykendall* decision but modifying it, much as the Sixth Circuit did in *Hanson*, to include a component that there be a "fair assurance" or "high probability" that the error could not have been outcome determinative. It is this aspect of the rule as declared which obviates the need to grant a new trial as against Breault. All aspects of this order involve controlling questions of law as to which there is substantial ground for difference of opinion. Moreover, an immediate appeal from the order granting a new trial as to Sullivan but denying it as to Breault may materially advance the ultimate termination of this litigation. Having so stated, pursuant to 28 U.S.C. § 1292(b), each party shall have ten (10) days from the date of the entry of this memorandum and order to apply to the Court of Appeals for the First Circuit to see whether, in its discretion, that Court will permit an interlocutory appeal to be taken from this order.

### IV. Conclusion.

Subject to the possibility of an interlocutory appeal pursuant to the section immediately above, the motion of Francisco and Maria Cabral for a new trial is ALLOWED as to William Sullivan and DENIED as to Donald Breault.

SO ORDERED.