Harry SMITH, Plaintiff–Appellant,

v.

GULF OIL COMPANY, et al., Defendants–Appellees,

Joseph CARBONE, Plaintiff–Appellant, Cross–Appellee,

v.

AMERICAN PRESIDENT LINES, et al. (91–3036), Defendants–Appellees,

Pope & Talbot, Incorporated (91–3077), Defendant–Appellee, Cross–Appellant,

Harry SMITH

v.

GULF OIL, et al.

Ashton H. REEVES, Plaintiff–Appellant,

v.

AMERICAN EXPORT ISBRANDSTEN, et al., Defendants–Appellees.

Nos. 91–3034, 91–3036, 91–3040 and 91–3077.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 21, 1991.

Decided June 3, 1993.

Leonard C. Jaques (argued and briefed), Jaques Admiralty Law Firm, Detroit, MI, for Harry Smith, Joseph Carbone and Ashton H. Reeves.

Harold W. Henderson (argued and briefed), Richard C. Binzley, Thomas O. Murphy, Russell W. Gray, Thomas A. Heffernan, Pamela Zarlingo, and Byron J. Horn, Thompson, Hine & Flory, Cleveland, OH, for Gulf Oil Co., et al., and American President Lines, Ltd.

Ronald D. Holman, II and William T. Smith (briefed), Calfee, Halter & Griswold, Cleveland, OH, for Texaco, Inc., amicus curiae.

Thomas O. Murphy, Thompson, Hine & Flory, Cleveland, OH, for Matson Navigation Co., Inc.

Matthew C. O'Connell (briefed), Reminger & Reminger, Cleveland, OH, for Pope & Talbot, Inc.

Harold W. Henderson (argued and briefed), Richard C. Binzley, Thomas O. Murphy, Russell W. Gray, Thomas A. Heffernan, Pamela Zarlingo, Byron J. Horn, Thompson, Hine & Flory, Cleveland, OH, Kent D. Riesen, Kitch, Saurbier, Drutchas, Wagner & Ken, and John C. Stewart, Bunda, Stutz & DeWitt, Toledo, OH, for American Export Isbrandsten, et al.

Before: JONES and MILBURN, Circuit Judges; and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

Plaintiffs Harry Smith, Joseph Carbone and Ashton H. Reeves appeal from a special jury verdict finding that they did not suffer from an asbestos-related disease, the result of which was to hold defendant shipowners free of liability under the Jones Act and general principles of maritime law. Plaintiffs claim two errors on appeal. First, they maintain that the district court erred by foreclosing any argument at trial that the defendant shipowners were liable for exposing the plaintiff seamen to hazardous concentrations of passive (i.e., secondary) cigarette smoke, as well as asbestos. Second, they contend that the district court erred by permitting alternate jurors to participate in the

jury's deliberations without allowing those alternates to vote on the verdict. For the following reasons, we affirm.

## I. BACKGROUND

In March 1986, large numbers of seamen began filing asbestos-related personal injury actions in the United States District Court for the Northern District of Ohio. By September 1987, the number of actions had swollen to approximately 1,500 cases, prompting the creation of the special Ohio Maritime Asbestos Litigation Docket ("MARDOC"). In their complaints, Harry Smith, Joseph Carbone and Ashton H. Reeves, as did many of the other plaintiffs on the MARDOC, sought compensation for personal injuries allegedly caused by shipboard exposure to asbestos or other unspecified "hazardous substances" under the Jones Act, 46 U.S.C.App. § 688, and under the general maritime doctrine of unseaworthiness.

More than four years after the initial filings, the trial of twenty consolidated cases, among them Smith's, Carbone's and Reeves' cases, began on October 22, 1990. The district court divided the trial into two separate phases. In Phase I, the jury would decide whether the plaintiffs suffered from an asbestos-related disease and set compensatory damages. In Phase II, the same jury from Phase I would determine the liability of each defendant for the damage suffered by the plaintiffs. The court further divided the cases by having four of the twenty plaintiffs present evidence at one time during Phase I. Smith, Carbone and Reeves were three of the first four plaintiffs to present evidence.

## II. THE TRIAL

The appellant seamen claim error with regard to two rulings issued by the district court during Phase I of the trial. First, they challenge the court's October 24, 1990 ruling foreclosing any argument that the defendant shipowners were liable for exposing the plaintiffs to hazardous concentrations of secondary cigarette smoke. The district court issued that ruling during a procedural conference two days after trial commenced, after plaintiffs had orally moved to exclude defendants' proffered evidence that certain plaintiffs suffered illnesses caused not by asbestos, but rather by their own cigarette smoking. Arguing their motion *in limine*, the plaintiffs urged that, should the court deny the motion and allow the shipowners' evidence regarding plaintiffs' individual smoking habits, the court should also permit the plaintiffs to counter the shipowners' tobacco defense by arguing that such evidence would not absolve the shipowners of liability since the shipowners were themselves liable for exposing seamen to dense and unrelenting tobacco smoke, as well as asbestos. By allowing and even encouraging smoking in poorly ventilated working and living quarters, plaintiffs wished to argue, the shipowners breached both their duty of due care under the Jones Act and their absolute duty under maritime law to provide a seaworthy vessel, which encompasses the duty to provide safe living and working conditions.

The district court was unpersuaded. It both denied the plaintiffs' motion *in limine* and foreclosed their counter-argument. At trial, the court indicated that it would (and did) permit the shipowners to present evidence that, for certain plaintiffs, cigarette smoking—not asbestos—caused their lung diseases. With little elaboration, the court declared that quarters laden with cigarette smoke cannot, as a matter of law, render a ship unseaworthy. Under the court's ruling, the shipowners' liability would turn strictly on whether shipboard asbestos caused the plaintiffs' illnesses, and Phase I of the trial would turn exclusively on whether each plaintiff "suffers from an injury or disease or condition by virtue of breathing or inhaling asbestos fibers." Tr. Trns. at 50 (Nov. 13, 1990). Accordingly, the court refused to instruct the jury that dense cigarette smoke aboard a ship may support a finding that the ship's owner was negligent or that the ship was unseaworthy.

Appellants do not now challenge the district court's decision to allow the shipowners to present evidence that appellants' own smoking caused their illnesses. They do appeal, however, the district court's ruling insofar as it barred them from arguing in response that the shipowners were themselves

liable for the plaintiffs' tobacco-related conditions.

The appellants' second claim of error focuses on the presence of alternate jurors during the jury's deliberations. The parties selected ten jurors, six designated at the time of selection as regulars and four as alternates. On November 30, 1990, at the conclusion of the plaintiffs' presentation of evidence on the medical and damages issues, the district court proposed that all ten of the "jurors" retire, with the six regulars deliberating and voting, and the four alternates auditing the deliberations but neither participating in the discussions nor voting on the verdict. The district court did not want to dismiss the four alternates because the length of the trial and the potential for continued proceedings made it possible, if not likely, that some of the regular jurors would have to be dismissed. Therefore, it was desirable from the standpoint of avoiding a mistrial that the alternates remain available. The court, in rather harsh terms, asked the parties to stipulate to this arrangement "without any flack." Tr. Trans. at 164 (Nov. 30, 1990). After some discussion, the defendants requested additional time to consider the proposal, and the court agreed.

On December 3, 1990, the parties returned to court. Initially, the plaintiffs' attorney agreed to the court's suggestion, but the defendants' attorneys conditioned their agreement on disclosure of the verdict in the first four cases. In turn, plaintiffs' counsel conditioned his agreement on the court's suggestion of non-disclosure. The court then decided to disclose the verdicts, but only to counsel. Plaintiffs' counsel responded by suggesting a jury of eight, with agreement by six required for a verdict. When the court refused, plaintiffs' attorney stated that he could not see the purpose of having four people silently observing the jury, and added that the alternates' presence would intrude on the "sacred deliberation of a Jury." Tr. Trns. at 95 (Dec. 3, 1990). The court in response expressed its concern for the feelings of the jurors who are simply sent home at the conclusion of trial as well as its desire to retain the same jury for both phases of the trial. Plaintiffs' attorney complained that this approach was very unconventional, to which the district judge countered:

> I agree with you, but the radical departure we have already made in this case is inured to the benefit of the Plaintiffs in that I have subjected the Plaintiff to conventional discovery. That's it. I am going to disclose the verdicts given there is no stipulation; the other six will deliberate and four will be excused, and we will begin to adhere more and more to conventionalism and the single cases. We won't go with the multiple cases. You have addressed to this Court already a mass of cases which defies conventional management, and then at this juncture, when it serves your particular interest, you embrace conventionalism. Well, we will excuse the other four and go with the six and the verdicts will be disclosed.

Tr. Trns. at 98 (Dec. 3, 1990). After a brief discussion between plaintiffs' attorney and the district judge about possible castigation, the parties held a meeting off-record. In that meeting, they apparently stipulated to an arrangement under which the alternates would be present *and* participate in the jury's deliberations, but only the six regular jurors would vote on the verdict. The court instructed the jury accordingly.

The jury found that neither Smith, Carbone, nor Reeves suffered from an asbestos-related injury.[1] These timely appeals followed.[2]

## III. CIGARETTE–SMOKE LIABILITY

■ Smith, Carbone and Reeves argue that it was error for the district court to preclude use of their cigarette-smoke theories of liability as a matter of law. Whether

---

1. The jury found in favor of the fourth plaintiff, seaman Maurice J. Moline (deceased), in the amount of $166,000 in compensatory damages. For our disposition of the Moline appeal, *see Miller v. American President Lines, Ltd.*, 989 F.2d 1450 (6th Cir.1993).

2. Defendant shipowners for purposes of these appeals include American Export Isbrandtsen Lines, Inc., American Export Lines, Inc., Farrell Lines, Inc., Gulf Oil Co., Isbrandtsen Lines, Sinclair Refining Co., Union Oil Company of California, United Fruit Co., and Pope & Talbot, Inc.

the shipowners were negligent in permitting and encouraging smoking in inadequately ventilated quarters, the plaintiffs maintain, is a question of fact appropriately decided by the jury. So too, they add, is the seaworthiness of a ship whose air is thick with unrelenting cigarette smoke. Plaintiffs contend that the district court should not have disposed of these issues as a matter of law.

We need not here reach the novel and difficult question whether a shipowner, by virtue of maintaining a ship dense with cigarette smoke generated by its occupants, may have breached its Jones Act duty of care or its maritime law duty to maintain a seaworthy ship.[3] Plaintiffs' counsel never sought to plead such potential liability although several years had passed since filing suit. Instead, they presented their cigarette-smoke theories of liability in an altogether off-hand manner, late in the trial proceedings. We conclude that the district court was well within its discretion to eliminate the issue as unworthy of trial.

In the interest of promoting efficient, coherent trials, the Federal Rules of Civil Procedure recognize a broad authority in district courts to distill the issues to be argued at trial. Toward that end, Rule 16 directs courts to use pretrial conferences to weed out unmeritorious claims and defenses before trial begins. By its own terms, the rule permits participants at a pretrial conference to take action with respect to "the formulation and simplification of the issues, including the elimination of frivolous claims or defenses." Fed.R.Civ.P. 16(c)(1). The Advisory Committee notes underscore the court's authority to foreclose frivolous arguments:

> The reference in Rule 16(c)(1) to "formulation" is intended to clarify and confirm the court's power to identify the litigable issues. It has been added in the hope of promoting efficiency and conserving judicial resources by identifying the real issues

prior to trial.... The notion is emphasized by expressly authorizing the elimination of frivolous claims or defenses at a pretrial conference. There is no reason to require that this await a formal motion for summary judgment [or other formal process].

Fed.R.Civ.P. 16 advisory committee's note; *see also Mains v. United States,* 508 F.2d 1251, 1259 (6th Cir.1975) ("One of the purposes which the pretrial conference serves is to expedite disposition of cases by simplifying the issues and eliminating surprise."); *In re Control Data Corporation Securities Litigation,* 933 F.2d 616, 621 (8th Cir.1991) ("Rule 16(c)(1) directs the parties to formulate and simplify the issues....")

Here, there is ample reason to regard the plaintiffs' belated attempt to rely upon the cigarette-smoke theory as inconsistent with the Committee notes accompanying Rule 16(c)(1), which place upon counsel "a substantial responsibility for assisting the court in identifying the factual issues worthy of trial." Fed.R.Civ.P. 16 advisory committee's note; *cf., Erff v. MarkHon Industries, Inc.,* 781 F.2d 613, 617 (7th Cir.1986) ("Attorneys at a pre-trial conference must make a full and fair disclosure of their views as to what the real issues of the trial will be. [Citations omitted.]")

■ In this case, plaintiffs' counsel failed to present the district court with a basis to believe that the question—whether the defendant shipowners were responsible for the plaintiffs' smoking-related illnesses—warranted discussion at trial. To the contrary, plaintiffs' counsel's conduct indicated that he was not prepared to make the argument seriously. Although these cases had been pending for four years, the plaintiffs never identified shipboard cigarette smoke as a grounds for liability until two days after trial

---

**3.** Shipowners indeed have an absolute duty to provide a seaworthy vessel, *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); *Monsanto Chemical Co. v. No. 3 Bull Towing Co.,* 326 F.2d 18, 21 (6th Cir.1963), a duty that includes furnishing safe living and working quarters. *Smith v. Ithaca Corp.,* 612 F.2d 215, 219 (5th Cir.1980), *overruled on other grounds by Beech Aircraft Corp. v. Rainey,* 488

U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988); *see generally* Martin J. Norris, The Law of Seamen § 27:7, at 214 (1985). If shipboard quarters are unsafe because toxic fumes linger, a ship may be unseaworthy. *Smith,* 612 F.2d at 219. Likewise, the owners of such a ship may be found in breach of their duty of reasonable care and, thus, liable under the Jones Act, 46 U.S.C.App. § 688. *Id.*

commenced. Neither their complaints—which claimed injuries resulting from exposure to asbestos and "hazardous substances other than asbestos"—nor any of their discovery materials or other pretrial documents named cigarette smoke as a cause of injury.[4] Additionally, the plaintiffs never made an offer of proof identifying any medical evidence regarding a connection between shipboard exposure to passive smoke and any plaintiff's illness; they named no medical experts and identified no expert reports on the issue of secondary smoke as a causal factor. Thus, for the four years leading up to trial, the parties and the court regarded the seamen's claims as assertions of exclusively asbestos-related injuries. While a party's tardiness in raising an issue may not always render the issue extraneous, tardiness coupled with other indications can raise doubts as to the seriousness with which that party is prepared to present the argument at trial. Here, those other indications exist.

We note, for example, the manner and context in which plaintiffs' counsel advanced his argument. First, he never made any formal motion, such as a motion to amend the complaints, to include tobacco smoke among the claimed theories of liability. Rather, as noted above, he raised the cigarette-smoke theory only in the context of an oral motion urging the court to exclude the defendant shipowners' evidence that the plaintiffs' cigarette smoking, rather than exposure to asbestos, caused their respiratory illnesses. If the court allowed the shipowners to argue that smoking caused these illnesses, counsel insisted, the plaintiffs should be permitted to argue that the shipowners were at least partly responsible. While arguing that motion,

counsel provided no citation to supporting authority, nor any indication that he had procured any supporting evidence, such as medical experts or expert reports. Nor, after the court ruled on his motion, did he follow up with any written memorandum of facts and law or proffer of evidence urging the district court to reconsider. Indeed, plaintiffs' counsel has yet to point to any evidence that could be used to disentangle the claimed effects of passive shipboard smoke from the effects of tobacco smoke stemming from other sources.[5] In short, plaintiffs' counsel consistently has presented his tobacco theory in a manner indicating the argument is neither serious nor earnest.

Further still, counsel's remarks during the argument on his motion *in limine* suggest that he raised his tobacco theory merely as a tactical effort to persuade the shipowners not to offer—or the court not to permit—their defense:

> [T]hey [the shipowners] are going to get these doctors to say he has a clean bill of health except he smokes cigarettes.
>
> \* \* \* \* \* \*
>
> Now, I am saying if they want to play the game, I am ready to go, but you can't keep me from properly showing this Jury that these seamen were subjected to an additional toxin [*i.e.*, shipboard secondary smoke.]
>
> \* \* \* \* \* \*
>
> So it would be my motion in limine to keep anything about cigarettes—cigarette smoking out, totally. But if you want to bring it in, then I would insist upon bringing in factors with regard to the unseaworthiness aspect.

4. Even had plaintiffs' specified cigarette smoke in their complaints, we would nevertheless be inclined to reject their argument on appeal. *See, e.g., Veranda Beach Club Limited Partnership v. Western Surety Co.*, 936 F.2d 1364 (1st Cir.1991):

> The issue is not whether the claim was ever raised in the pleadings, but whether it was sufficiently developed and perennialized in the relevant pretrial proceedings. As a case takes shape and the court struggles to narrow and pinpoint the issues, the parties have an unflagging obligation to spell out squarely and distinctly those claims they desire to advance at the trial proper. Good-faith compliance with

> Civil Rule 16 plays an important role in this process.

*Id.* at 1371 (citation omitted).

5. After oral argument, in the context of an unsuccessful motion to supplement the appendix, plaintiffs noted that their counsel successfully extracted testimony during cross-examination from one of defendant shipowners' expert witnesses to the effect that asbestos is an incomplete carcinogen which needs cigarette smoke to cause most asbestotic diseases. Plaintiffs' later careful review of the record on appeal does nothing to rectify their earlier failure to pursue diligently the cigarette-smoke theory of liability.

Tr. Trns. at 29–36 (Oct. 24, 1990). While a lawyer's tactical reasons for raising a legal argument are not typically relevant to a trial court's determination whether to entertain that argument, here, counsel's failure to raise the theory except to counter the shipowners' proffered defense—coupled with his willingness to abandon the argument if the shipowners would shelve that defense—deepens the impression that he was not raising a serious claim. More likely, plaintiffs' counsel was endeavoring simply to persuade the court to bar the shipowners' defense, or alternatively, to persuade the shipowners themselves to drop it. As the argument was presented, the district court could quite reasonably have concluded—while not saying so explicitly—that plaintiffs' counsel was not prepared and did not intend to argue earnestly that the shipowners were liable for maintaining excessively smoke-filled ships.

Rule 16 empowers district courts to weed out frivolous claims. Failure of counsel to identify an issue for the court can result in waiver: "If counsel fail to identify an issue for the court, the right to have the issue tried is waived." Fed.R.Civ.P. 16 advisory committee's note. Here, counsel never seriously suggested that he was prepared to advance this novel argument with proof. Accordingly, for these reasons, and without deciding whether a properly presented claim of cigarette-smoke liability would stand as a matter of law, we hold that the district court's decision to foreclose argument on the plaintiffs' tobacco claims was a proper exercise of its authority to distill the issues argued at trial.

## IV. ALTERNATE JURORS

Smith, Carbone and Reeves also claim that the district court committed reversible error by allowing the four alternate jurors to participate in the jury's deliberations. As mentioned above, and in accordance with a purported stipulation between the parties, the district court instructed the alternates to deliberate with the jury, but directed that only the six regular jurors were to vote on the verdict. The record is not entirely clear in this regard, but the parties have presented no evidence to suggest that the alternates disregarded the court's instructions. Accordingly, we assume that the alternates participated in the jury's deliberations.

The plaintiff seamen now argue that, despite the court's reference to a stipulation, "[t]he record here lacks an express statement of agreement by plaintiffs' counsel to allowing the alternates to participate in deliberations." Aplnt's. Br. at 18. Moreover, the seamen contend that any agreement the parties may have reached is ineffectual as obtained through the district court's "threats and intimidation." Id. at 19. Finally, the plaintiffs argue that, even had they consented to the jury arrangement, reversible error would still exist because the alternates' presence violated the sanctity of the jury's deliberations.

Defendant shipowners respond that the plaintiffs either stipulated or failed to object to the alternates' participation in the jury's deliberations and, in either event, have waived the right to raise this issue on appeal. Moreover, the defendants believe that federal rules of procedure permit parties to stipulate to having alternates participate in deliberations. Alternatively, the shipowners contend that any error resulting from the alternates' presence in the jury room is necessarily harmless because the plaintiffs have been unable to demonstrate any resultant prejudice.

Our initial inquiry concerns the presence or absence of a stipulation between the parties. If one exists, then we must further determine whether the agreement was obtained through coercion. The court's reference to the purported stipulation is contained in the following excerpt from the record:

MR. SMITH [Defendants' Counsel]: Your Honor, could we have a couple of minutes and Mr. Jaques [Plaintiffs' Counsel] counsel [sic] with his co-counsel, and maybe we can work something out.

(Discussion held off the record.)

THE COURT: We are about ready to call the Jury in to present the charge.

The parties have stipulated with respect to the alternate jurors being four in number of a total of Jury panel of 10; that all 10 may participate in the deliberations, but

the verdict must be a unanimous verdict among the first six jurors.

Tr. Trns. at 99–100 (Dec. 3, 1990). Plaintiffs do not seriously contend that they failed to reach an agreement as to the alternate juror arrangement during the off-record conference. Rather, they argue that because the terms of the agreement were not reduced to writing or otherwise clearly recorded, the stipulation provided an insufficient means for departing from the traditional practice of discharging alternates upon commencement of deliberations.

■ Most courts considering alternate juror stipulations, at least in the civil context, have concluded that a written or otherwise formalized agreement is unnecessary. *See Hanson v. Parkside Surgery Center,* 872 F.2d 745, 748 (6th Cir.1989) (unrecorded oral stipulation); *DeBenedetto v. Goodyear Tire & Rubber Company,* 754 F.2d 512, 515 (4th Cir.1985) ("assent through silence"). It is similarly of no moment that the discussion giving rise to the stipulation occurred off-record. *See Hanson,* 872 F.2d at 748. Admittedly, the better course for trial courts to follow would be to require a written stipulation clearly embodying the terms of the agreement. *See, e.g., Rideau v. Parkem Industrial Services, Inc.,* 917 F.2d 892, 895 (5th Cir.1990); *Equal Employment Opportunity Commission v. Delaware Department of Health and Social Services,* 865 F.2d 1408, 1420 n. 17 (3d Cir.1989); *Kuykendall v. Southern Railway Company,* 652 F.2d 391, 392 (4th Cir.1981). A court's failure to do so, however, does not constitute error *per se. Hanson,* 872 F.2d at 748–49; *DeBenedetto,* 754 F.2d at 514–15. In this case, the record contains sufficient indicia of the stipulation's existence to convince us that the plaintiff seamen, through their counsel, stipulated to having the alternates participate in the jury's deliberations.

■ Plaintiffs next argue that the stipulation was obtained as a result of the district court's coercion and is therefore invalid. In short, we disagree with plaintiffs' characterization of the record. Admittedly, the court's invitation to stipulate was harsh. The same holds true for its proposal to do away with consolidated trials for the remaining seamen had plaintiffs refused to permit the alternates to deliberate. Against this background, however, it must be remembered that plaintiffs were represented by able and experienced counsel at trial. This same counsel, after listening to the court's proposals, agreed to the jury arrangement during an off-record conference taking place outside the district court's presence. Based upon this record, we cannot say that the trial judge's strong words were enough to overcome plaintiffs' counsel's ability to act in the perceived best interest of his clients.

■ Having concluded that plaintiffs validly stipulated to the jury arrangement about which they presently complain, plaintiffs find themselves in an unenviable position when arguing to this court that we should look past their waiver of the issue. Our brief discussion begins with Federal Rule of Civil Procedure 47(b) which, at the time of trial, provided in pertinent part:

> The court may direct that not more than six jurors in addition to the regular jury be called and impanelled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties.... An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict.[6]

6. Effective December 1, 1991, the institution of the alternate juror was abolished. *See* Fed. R.Civ.P. 47 advisory committee's note. The Advisory Committee cited dissatisfaction with the alternate juror system because of the burden placed on alternates who were required to listen to evidence "but denied the satisfaction of participating in its evaluation." *Id.* Rule 47(b) now provides simply that "[t]he court shall allow the number of peremptory challenges provided by 28 U.S.C. § 1870." The problem of potential mis-

trials has been mitigated by a concurrent amendment to Federal Rule of Civil Procedure 48 which now provides:

> The court shall seat a jury of not fewer than six and not more than twelve members and all jurors shall participate in the verdict unless excused from service by the court pursuant to Rule 47(c). Unless the parties otherwise stipulate, (1) the verdict shall be unanimous and (2)

By allowing the alternates to participate in the jury's deliberations, the court admittedly contravened Rule 47(b)'s plain terms. *Rideau*, 917 F.2d at 895; *Kuykendall*, 652 F.2d at 393; *cf. Hanson*, 872 F.2d at 748 (assuming violation of Rule 47(b) where alternates participated and voted on verdict). This statement, however, does little to forward plaintiffs' position because our Circuit and others previously have enforced the principles of waiver and harmless error in the alternate juror context. *See, e.g., Hanson*, 872 F.2d at 748 ("assuming that Rule 47(b) ... may have been violated, ... we still believe such violations are subject to the application of the harmless error standards"); *Cabral v. Sullivan*, 961 F.2d 998, 1001–03 (1st Cir.1992) ("Rule 47 clearly indicates that a district court has no discretion to allow alternate jurors to deliberate with the regular jurors, absent the consent of the parties."); *Equal Employment Opportunity Commission*, 865 F.2d at 1421 ("Any claims of prejudice which the parties might otherwise have been able to assert were waived by their express disavowal of any objections when the court raised the idea of allowing the alternate to remain with the jury."); *La-Tex Supply Co. v. Fruehauf Trailer Division*, 444 F.2d 1366, 1367 (5th Cir.1971) (no reversible error "since the procedure followed with respect to the alternate juror was explained to and agreed upon by counsel for both parties").[7] In short, we see no reason to depart from accepted practice under the facts of this case.

In reaching our decision, we are guided in some measure by the Supreme Court's recent decision in *United States v. Olano*, —

U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). *Olano* involved Federal Rule of Criminal Procedure 24(c), the nearly-identical counterpart to Rule 47(b). Considering facts analogous to those here, the Court held that the unchallenged presence of alternates during a jury's deliberations, without more, does not constitute plain error of the type recognized by Federal Rule of Criminal Procedure 52(b).[8] The principles and decision enunciated in *Olano* apply *a fortiori* in the civil context where courts pay less strict attention to procedural protocol.

Accordingly, the judgment of the district court is AFFIRMED.[9]

---

no verdict shall be taken from a jury reduced in size to fewer than six members.

7. Only the Fourth Circuit applies a standard of *per se* reversal for violations of Rule 47(b). *See Kuykendall*, 652 F.2d at 393. The cases upon which *Kuykendall* relied, however, are of doubtful vitality in light of the *Olano* decision. *See infra.*

8. The *Olano* Court was persuaded in part by the respondents' failure to make a "specific showing that the alternate jurors in this case either participated in the jury's deliberations or 'chilled' deliberations by regular jurors." —— U.S. at ——, 113 S.Ct. at 1781, 123 L.Ed.2d 508. Here, of course, we have assumed that the alternates followed the district court's directive to participate

in deliberations. The difference between *Olano* and this case is that, in *Olano*, the Supreme Court assumed without deciding that Rule 24(c) is nonwaivable. *See id.* As noted above, however, courts generally permit parties to waive Rule 47(b).

9. One of the defendant shipowners, Pope & Talbot, Inc., has brought a cross-appeal arguing that the district court lacked personal jurisdiction over it and challenging the court's ruling that the Pope & Talbot had waived any objection to the court's jurisdiction. Because we rule in favor of the defendants on the merits, we need not address this procedural argument.