**In re IBI SECURITY SERVICE, INC.**

**IBI SECURITY SERVICE, INC., Debtor in Possession, Plaintiff,**

v.

**NATIONAL WESTMINSTER BANK USA, National Westminster Bank, N.J., First Fidelity Bank, N.A., New Jersey, Revere Armored, Inc., and Nigel James Somerville Bowie, An Underwriter at Lloyd's, London, Other Lloyd's Underwriters Subscribing to Insurance Policy No. 576/ G371634, Defendants.**

No. CV 93–1192 (ADS).
Bankruptcy No. 91–71235–21.
Adv. No. 092–7042–21.

United States District Court,
E.D. New York.

Nov. 9, 1994.

Mangone & Schnapp (Louis A. Mangone, of counsel), New York City, for plaintiff.

Bingham Englar Jones & Houston (Martin J. Flannery and Joseph T. Caulfield, of counsel), New York City, for defendant Nigel James Somerville Bowie.

Winston & Strawn, New York City, for defendants Nat. Westminster Bank, USA and Nat. Westminster Bank, N.J.

Douglas A. Durnin, Massapequa, NY, for defendant Revere Armored, Inc.

Otterbourg, Steindler, Houston & Rosen, P.C. (Stanley L. Lane and Steven B. Soll, of counsel), New York City, for defendant First Fidelity Bank, N.A., New Jersey.

### ORDER

SPATT, District Judge:

The plaintiff and debtor-in-possession appeals from a decision of the Bankruptcy Court (Judge Cecilia H. Goetz) dated January 28, 1993 that, among other things, (1) denied a motion for partial summary judgment in favor of the plaintiff on its claim for recovery of its litigation expenses from Lloyd's of London ("Lloyd's"), and (2) granted in part a motion for summary judgment by the defendant Nigel James Somerville Bowie ("Bowie") on behalf of Lloyd's dismissing the plaintiff's claims for recovery of litigation expenses.

### BACKGROUND

The plaintiff IBI Security Service, Inc. ("IBI") is an armored car carrier that essentially collects, secures, stores and transports currency and coin for its customers. IBI purchased three "all risk" insurance policies from Lloyd's covering the period August 17, 1990 to August 16, 1991. The policies were issued by the defendant Bowie, who is an underwriter at Lloyd's. The policies insured IBI against physical loss or damage to the property it held. The policies also included a "Sue and Labour Clause" which provided, in relevant part, as follows:

> In case of any loss or misfortune or claim made against the Assured it shall be lawful to the Assured ... to sue, labour and travel for, in and about the defence, safeguard and the recovery of the Property or any part thereof, and/or incur costs and expenses with the consent of Underwriters in the defence of any such claim ... at the expense of Underwriters.

In April, 1991, the defendant National Westminster Bank, New Jersey ("NatWest") discovered an alleged $2.9 million shortage in its coin inventory stored at the IBI storage facility. As a result of the shortfall, NatWest removed approximately $6.8 million of its currency from IBI's storage facility. IBI alleges that included in this $6.8 million amount removed by NatWest was approximately $1 million in coin and currency which IBI had received from the defendant First Fidelity Bank, N.A. ("First Fidelity") (NatWest and First Fidelity hereinafter will be referred to collectively as "the banks"). IBI also alleges that NatWest off-set IBI's accounts at NatWest to compensate NatWest for the shortage.

IBI contends that it notified Lloyd's in May, 1991 of the losses arising from the

alleged shortage, and demanded that Lloyd's (1) acknowledge its duty to indemnify IBI for the full amount of any losses arising from the shortage, less the applicable deductible, under the terms of the insurance policies, and (2) consent to pay the costs and expenses IBI will incur in investigating and defending the claims of the banks, pursuant to the "Sue and Labour" clause. IBI alleges that Lloyd's refused to acknowledge its obligation to indemnify IBI for any losses, and to consent to pay IBI's litigation costs.

On June 4, 1991, IBI filed a Chapter 11 bankruptcy petition. The banks filed claims in the bankruptcy totalling the entire amount of the alleged shortage. IBI commenced the present adversary proceeding on March 16, 1992, and joined as defendants the banks, New Jersey Revere Armored Inc., a customer of IBI, and Bowie. Essentially, the complaint seeks a declaration of IBI's rights against Lloyd's for indemnification for any losses, and payment of IBI's litigation expenses under the "Sue and Labour" clause. The complaint alleges four causes of action.

In the first cause of action, IBI demands that Lloyd's consent to pay for the costs IBI will incur in defending against the banks' claims, pursuant to the "Sue and Labour" clause. In addition, IBI demands that Lloyd's indemnify IBI and the banks for any losses arising from the shortage. The second and third causes of action seek recovery of the NatWest set-offs, on the grounds that they are preferences recoverable under 11 U.S.C. § 553. The fourth cause of action alleges a claim for unfair competition against NatWest and New Jersey Revere Armored, Inc.

In the adversary proceeding, NatWest counterclaimed against IBI for the amount of the shortage. Both banks also cross-claimed against Bowie for direct indemnification of any losses arising from the shortage and for payment of their litigation expenses under the Sue and Labour clause, on the ground that they are third-party beneficiaries to the insurance contracts. Bowie, on behalf of Lloyd's, raised several contractual defenses in answer to the complaint and the banks' cross-claims, including breach of the insurance policy by IBI on the grounds that it

stored more than $10 million at its facility, and that IBI failed to provide Lloyd's with timely notice of loss and proof of loss. Bowie also raised as a defense that the banks do not have a right of direct action against Lloyd's. Finally, Bowie counterclaimed against the IBI and the banks on the ground that IBI made material misrepresentations in its application for insurance, thus entitling Lloyd's to rescind the contract.

On June 30, 1992, the plaintiff moved for partial summary judgment on its first claim for relief. IBI sought a judgment that it had a right to recover litigation expenses from Lloyd's that were or will be incurred by IBI in connection with its defense of the claims asserted by the banks. The plaintiff contended that the insurance policy's "Sue and Labour" clause entitled IBI to recover these costs and expenses from Lloyd's. IBI also requested that Bowie's defenses on behalf of Lloyd's alleging breach of the contract by IBI on the grounds of storing more than $10 million at its facility, and failing to provide Lloyd's with timely notice of loss and proof of loss, be dismissed. Finally, in its motion IBI requested that to the extent the trier of fact determines that IBI suffered an actual loss, Bowie be obligated to indemnify IBI.

The banks joined IBI, and cross-moved for summary judgment on their cross-claims against Bowie, and to dismiss his defenses. Bowie cross-moved for summary judgment in his favor on all of his counter-claims against IBI and the banks. Among other things, Bowie sought judgment in his favor that he is not responsible for the litigation costs and expenses under the Sue and Labour clause, nor to indemnify IBI or the banks for any losses suffered by IBI.

The Bankruptcy Court issued a seventy-five page decision on January 28, 1993. In sum, Judge Goetz first denied IBI's motion with respect to the claim against Bowie for litigation expenses, holding that the "Sue and Labour" clause "has no necessary application to litigation expenses and attorney's fees." *See* January 28, 1993 Decision, at 39. Judge Goetz granted IBI's and the banks' motions with respect to dismissal of Bowie's defense that IBI had breached the insurance contract by maintaining more than $10 million at its

facility. However, she denied IBI's and the banks' motion to dismiss the Bowie's fourth defense regarding timely notice of the loss and proof of loss, holding that was an issue to be determined at trial. Judge Goetz also held that under the insurance policy the banks had a right of action for indemnification against Bowie, and granted the banks' motion on this issue. With respect to Bowie's motion to rescind the contract, the bankruptcy court held that summary judgment was precluded because the alleged fraud was a material issue of fact for the trier of fact to determine. Finally, Judge Goetz denied Bowie's motion in so far as it sought to dismiss the complaint and cross-claims for failure to state a claim.

An order pursuant to the terms of the opinion was entered on February 22, 1993.

The plaintiff appeals from the Bankruptcy Court's decision to the extent that Judge Goetz denied IBI's motion for summary judgment on the issue of IBI's recovery of litigation costs under the Sue and Labour clause. Essentially, IBI proceeds with the appeal as if it were of right. However, should the Court determine that the order was interlocutory, the plaintiff seeks leave to appeal pursuant to Fed.R.Bankr.P. 8001(b). The parties have only briefed the issue of whether leave to appeal should be granted. If the Court decides that IBI's appeal is as of right, or is otherwise appealable a this stage, then the parties will be given the opportunity to address the merits of the appeal at a later date.

## DISCUSSION

The Court must first determine whether the debtor can bring the present appeal as of right. If not, then the Court must decide whether leave should be granted for IBI to bring an interlocutory appeal of Judge Goetz's decision.

### 1. *Appeal as of Right.*

■ Pursuant to Fed.R.Bankr.P. 8001(a), an appeal as of right may taken from a "final judgment, order, or decree of a bankruptcy judge." An order is "final" for purposes of federal appellate jurisdiction when a decision has been entered that "ends the litigation on the merits and leaves nothing for the court to

do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)).

■ However, the requirement of finality is less rigidly applied in bankruptcy appeals. According to the Second Circuit, an order of the bankruptcy court may be immediately appealed if it disposes of a discrete dispute within the larger case, such as a determination of a creditor's claim or priority. *In re Johns–Manville Corp.*, 824 F.2d 176, 179 (2nd Cir.1987).

■ Even if an order is not a "final" judgment under the above definition, it may still be appealable under the "collateral order" exception to the final-judgment rule established by the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In order to come within the "small class" of decisions excepted from the final-judgement rule, the collateral order doctrine requires that the decision appealed from (1) must conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand*, 437 U.S. at 468, 98 S.Ct. at 2458; *United States v. Weiss*, 7 F.3d 1088, 1089 (2d Cir.1993) (all three requirements must be met for the non-final order to be appealable); *Johns–Manville*, 824 F.2d at 180.

■ In the Court's view, the decision of the Bankruptcy Court in this case is neither final, nor a collateral order. Judge Goetz's decision does not end the adversary proceeding on the merits so that all that remains for the Bankruptcy Court to do is to execute the judgment. Nor does it dispose of a discrete dispute within the larger bankruptcy case. Rather, her decision grants partial summary in favor of Bowie on the issue of IBI's right to the litigation costs under the Sue and Labour clause, and reserves for trial most of the other issues raised in IBI's four causes of action, including such issues as whether there is a loss under the terms of the insur-

ance contracts, whether IBI timely notified Lloyd's of the loss, whether the NatWest set-offs can be recovered as preferences, and the unfair competition claim.

With respect to the "collateral order" doctrine, it is the Court's view that the Bankruptcy Court's decision fails to meet the second and third requirements set forth in *Cohen v. Beneficial Industrial Loan Corp.* for a decision to be within the doctrine. Although in her decision Judge Goetz conclusively determined the disputed question regarding coverage of litigation costs under the Sue and Labour clause, the decision fails to meet the third *Cohen* requirement because it can be effectively reviewed on appeal from a final judgment. IBI's rights with respect to the Sue and Labour clause will not be "irretrievably lost in the absence of an immediate appeal," of the Bankruptcy Court's decision. *Johns–Manville*, 824 F.2d at 181 (quoting *Richardson–Merrell Inc. v. Koller*, 472 U.S. 424, 430–31, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985)).

With respect to the second requirement, the Court believes the issue of recovery of the litigation costs under the Sue and Labour clause is not completely separate from the merits of the action. IBI has asserted its right to such a recovery as the basis for part of its first cause of action. In the Court's view, the issue is sufficiently intertwined with IBI's claims for indemnity and coverage of loss under the insurance policies so that an independent basis of appeal is not warranted at this time.

Accordingly, IBI's appeal of Judge Goetz's decision can not be brought to this Court as of right, or under the aegis of the collateral order doctrine. The Court must, therefore, determine whether to grant leave to IBI to pursue an interlocutory appeal of the decision.

2. *Leave to Bring an Interlocutory Appeal.*

Pursuant to 28 U.S.C. § 158(a), a district court has jurisdiction to grant leave to hear appeals from interlocutory orders of bankruptcy judges. Such appeals "shall be taken in the same manner as appeals in civil pro-ceedings generally taken to the courts of appeals from the district courts." 28 U.S.C. § 158(c).

Section 158, however, does not provide any criteria for determining whether a district court should grant leave to hear an interlocutory appeal in a particular case. Thus, in construing section 158(a) district courts have adopted the standard set forth in 28 U.S.C. § 1292(b), which dictates the circumstances under which courts of appeals may accept interlocutory appeals from district courts. *See In re Bimco Industries, Inc.*, 124 B.R. 623, 625–26 (E.D.N.Y.1991); *In re Beker Industries Corp.*, 89 B.R. 336, 341 (S.D.N.Y. 1988); *In re Johns–Manville Corp.*, 45 B.R. 833, 835 (S.D.N.Y.1984).

Under section 1292(b), an interlocutory appeal may be granted when (1) the order appealed from involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b). In addition, to depart from the basic policy of postponing appellate review until after the entry of a final judgment, "exceptional circumstances" must exist that warrant an interlocutory appeal. *See Coopers & Lybrand*, 437 U.S. at 475, 98 S.Ct. at 2461; *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir.1990); *Escondido Mission Village L.P. v. Best Products Co., Inc.*, 137 B.R. 114, 116 (S.D.N.Y.1992) (citing cases). The Court will examine each of these elements individually.

**A. Controlling Question of Law.**

The dispute between Lloyd's and IBI involves the issue of whether the insurance policies' "Sue and Labour" clause requires Lloyd's to pay the costs and expenses of IBI in defending against the NatWest and First Fidelity claims. The question is one of contract interpretation, and it is well-settled that interpreting the provisions of a contract is a question of law. *See Harris Trust and Savings Bank v. John Hancock Mutual Life Insurance*, 970 F.2d 1138, 1147 (2d Cir.1992) ("The proper interpretation of a contract is a question of law for the court."), *cert. de-*

*nied,* —— U.S. ——, 113 S.Ct. 1585, 123 L.Ed.2d 151 (1993); *Network Publishing Corp. v. Shapiro,* 895 F.2d 97, 99 (2d Cir. 1990); *Antilles S.S. Co. v. Members of American Hull Ins. Syndicate,* 733 F.2d 195, 203 (2d Cir.1984). The Court must determine than, whether this question of law is "controlling".

■ To establish that an order contains a controlling question of law, it must be shown that either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation. *See Klinghoffer,* 921 F.2d at 25 (rejecting that in order to be a "controlling question of law," resolution of the issue on appeal must have precedential value for a large number of pending cases); *In re Duplan Corp.,* 591 F.2d 139, 148 n. 11 (2d Cir.1978); *In re Cement Antitrust Litigation,* 673 F.2d 1020, 1026 (9th Cir.1982).

In the present case reversal of the Bankruptcy Court's order would not terminate the litigation, as there are other issues to be determined at trial. Instead, the plaintiff alleges that if litigation costs are not awarded, IBI will be "effectively preclud[ed] from pressing valid claims" and will not have "the opportunity to recover substantial sums in the adversary proceeding." Under this theory, IBI contends that determining the issue of recovery of the litigation costs would materially affect the outcome of the litigation. The Court disagrees with the plaintiff.

As a practical matter the litigation may be affected by a determination on appeal because, if the Court affirms the Bankruptcy Court, the debtor may choose not to pursue his adversary proceeding. However, not pursuing the litigation would be the debtor's choice and not the result of the Court's determination of the legal issue on appeal. In this Court's view, as a legal matter the Court's determination of the issue of recovery of the litigation costs under the Sue and Labour clause will not materially affect the outcome of the litigation, as the underlying issue of the litigation is indemnification of IBI by Lloyd's for almost $3 million in alleged losses under the insurance policies.

Accordingly, the interpretation of the "Sue and Labour" clause in the insurance contract is not a controlling question of law.

**B. 'Substantial Grounds for Difference of Opinion.**

■ For there to be "substantial grounds for difference of opinion" regarding an issue, the issue must involve more than strong disagreement between the adversary parties. *See Kern–Tulare Water District v. City of Bakersfield,* 634 F.Supp. 656, 667 (E.D.Cal.1986), *aff'd in relevant part, rev'd in part,* 828 F.2d 514 (9th Cir.1987), *cert. denied,* 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988). There are substantial grounds for difference of opinion when the issue is "difficult and of first impression". *Klinghoffer,* 921 F.2d at 25.

The present issue involves the interpretation of the "Sue and Labour" clause of an insurance contract. Only three Second Circuit cases have dealt with the interpretation of such clauses. *See Armanda Supply Inc. v. Wright,* 858 F.2d 842 (2d Cir.1988); *Ope Shipping, Ltd. v. Allstate Ins. Co., Inc.,* 687 F.2d 639 (2d Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 946 (1983); *Seaboard Shipping Corp. v. Jocharanne Tugboat Corp.,* 461 F.2d 500 (2d Cir.1972). These cases, however, considered a "Sue and Labour" clause in the context of marine insurance policies. Thus, in the Court's view the present issue seems to be one of first impression in this circuit, thus allowing for a "substantial grounds for difference of opinion" as to whether the "Sue and Labour" clause should allow IBI to recover from Lloyd's the costs and expenses that it may incur in defending against the banks' claims.

**C. An Immediate Appeal May Materially Advance the Ultimate Termination of the Litigation.**

■ As explained above when considering whether the issue presented before the Court is a "controlling question of law," the resolution of an issue on appeal need not necessarily terminate the litigation in order to be appealable under § 1292(b). Rather, an immediate appeal must have the possibility of materially advancing the ultimate ter-

mination of the litigation. *See Klinghoffer,* 921 F.2d at 24–25.

The Court has already concluded that determination of the issue presented on appeal will not materially advance the ultimate termination of this proceeding. Whether or not Lloyd's pays IBI's litigation costs, the remaining claims, counterclaims, and cross-claims in this litigation—all of which ultimately rest on whether Lloyd's must indemnify IBI—remain to be determined at trial, and are not affected in any legal sense by the determination of the issue on appeal.

Accordingly, the debtor's appeal fails to meet the third criteria under section 1292(b).

### D. Exceptional Circumstances.

Finally, in the Court's view exceptional circumstances that would justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment do not exist in this case. The present appeal will not "serve to avoid protracted and expensive litigation," *Cement Antitrust Litigation,* 673 F.2d at 1026, because the material issues in this litigation have nothing to do with the Sue and Labour Clause.

Moreover, the Court does not agree with IBI's contention that a reversal of the Bankruptcy Court's decision after trial and a final judgment has been rendered would require relitigation of many issues raised by the adversary proceeding. If this Court decides to reverse the Bankruptcy Court's decision after a final judgment has been entered, then IBI can resolve the dispute by simply presenting its litigation costs to Lloyd's for reimbursement.

### CONCLUSION

For the reasons stated above, the plaintiff has not shown that the present appeal meets the requirements for granting interlocutory appeals under 28 U.S.C. § 1292(b). Accordingly, IBI's motion for leave to file an appeal of the January 28, 1993 decision of the Bankruptcy Court pursuant to Fed.R.Bankr.P. 8001(b) is denied and the appeal is dismissed.

The Clerk of the Court is advised that this action closes the case.

**SO ORDERED.**