JUDGMENT OF DISMISSAL
F. Lee Bailey (the "Debtor") filed a notice of appeal with respect to the bankruptcy court's January 10, 2018 order (the "Order") sustaining the objection by the United States of America, Internal Revenue Service (the "IRS"), to plan confirmation to the extent the objection raised "subject matter jurisdiction and sovereign immunity issues." The basis for the IRS's objection as to those issues was that the Debtor's interest in future pension and Social Security income did not constitute property of the bankruptcy estate and, therefore, the bankruptcy court lacked subject matter jurisdiction to value the Debtor's interest in future pension income under § 506(a), and there was no statutory waiver of sovereign immunity under § 106.[1]
On July 24, 2018, the Panel entered an Order to Show Cause directing the Debtor to demonstrate why this appeal should not be dismissed for lack of jurisdiction as the Order is not a final, appealable order. On August 14, 2018, the Debtor filed a response to the Order to Show Cause, arguing that the Order is final and therefore he is entitled to appeal as of right. Alternatively, the Debtor asks the Panel to grant leave to appeal. The IRS also filed a response to the Order to Show Cause, stating that the Order is interlocutory but also urging the Panel to grant leave to appeal.
For the reasons set forth below, the Panel concludes that the Order is not final and that no exception to the final judgment rule confers appellate jurisdiction on this Panel. Accordingly, this appeal is DISMISSED.
BACKGROUND
I. The Debtor's Federal Tax Liens
On August 7, 2013, the IRS filed two separate Notices of Federal Tax Lien with the Registry of Deeds for Cumberland County, Maine, as to Debtor's federal income tax liabilities for tax years 1993 and 1994 in the total amount of $840,718.00, and for tax years 1995 through 2001 in the total amount of $3,689,291.67. The IRS also filed both Notices of Federal Tax Lien with the Maine Secretary of State on August 5, 2013.
II. The Debtor's Chapter 7 Bankruptcy Case
In June 2016, the Debtor filed a chapter 7 petition. On his bankruptcy schedules, the Debtor listed the IRS as a secured creditor with a claim in the amount of *404 $5,198,930.92 for federal tax debts for the years 1993 through 2001. The Debtor received a discharge in his chapter 7 case in October 2016, which eliminated his personal obligation to repay the IRS for its claims for tax years 1993 through 2001. It is undisputed that the IRS's liens on the Debtor's personal property survived the chapter 7 case.
III. The Debtor's Chapter 13 Bankruptcy Case
The Debtor filed a chapter 13 petition in June 2017. On his bankruptcy schedules, the Debtor listed the IRS as a creditor with a $4,450.00 claim, secured by the Debtor's interest in three pensions-(1) a Screen Actors Guild ("SAG") pension, (2) an American Federation of Radio & Television Artists ("AFRTA") pension; and (3) a United Airlines ("UAL") pension. He also indicated that he received monthly income from the three pensions as follows: (1) $702.00 per month from the SAG pension; (2) $225.00 per month from the AFRTA pension; and (3) $556.00 per month from at the UAL pension. He also reported that he received $1,786.00 per month in Social Security benefits.
A. The Relief from Stay Motion
On August 9, 2017, the IRS filed a Motion for Relief from Stay ("Relief from Stay Motion"), seeking to enforce its federal tax liens on the Debtor's pension accounts and Social Security benefits. After a hearing on the Relief from Stay Motion, the bankruptcy court, on October 3, 2017, entered an order and memorandum opinion granting the Relief from Stay Motion. Thereafter, the IRS served notices of levy on the Social Security Administration and the three pension administrators.
B. Proposed Chapter 13 Plan and IRS's Objection
The Debtor filed a Chapter 13 Plan (the "Plan"), providing for monthly payments to the chapter 13 trustee of $313.00 for 54 months, and proposing a lump-sum payment to the IRS based on the present value of the Debtor's rights to future pension plan payments and future Social Security benefits.
The IRS objected to the Plan, arguing that it should not be confirmed because: (1) the Plan was not filed in good faith; (2) the petition was not filed in good faith; (3) the Plan was not feasible; and (4) the Plan did not provide proper treatment of the IRS's secured claim. With respect to the last issue, the IRS asserted that the Debtor's rights to pension plan payments and Social Security benefits were not property of the bankruptcy estate and, as a result, the bankruptcy court did not have "jurisdiction to value the pension rights under § 506(a)." In response, the Debtor countered that his pension and Social Security income was property of the estate, and that the bankruptcy court had "jurisdiction and authority under § 506(a)" to value the IRS's tax liens.
Thereafter, the bankruptcy court requested that both the Debtor and the IRS submit briefs as to the following two legal issues: (1) whether the bankruptcy court had subject matter jurisdiction to determine the value of the Debtor's rights to pension plan payments and Social Security benefits for purposes of determining the IRS's secured claim under § 506(a); and (2) whether sovereign immunity was statutorily waived under § 106. Both parties submitted the required briefs.
In its brief, the IRS argued that the Debtor's rights to future pension plan payments and future Social Security benefits (as distinguishable from any pension and Social Security payments actually received) were not property of the bankruptcy estate under § 541 and, as a result, *405 they could not form the basis for the IRS's secured claim under § 506(a).[2] Thus, the IRS claimed, the bankruptcy court did not have subject matter jurisdiction to value the Debtor's rights to future pension and Social Security benefits. Furthermore, the IRS argued that, because the Debtor's interest in the pension and Social Security benefits was not property of the estate, there was no statutory waiver of sovereign immunity under § 106(a)(1) which would permit the bankruptcy court to value the Debtor's rights to future pension and Social Security payments.[3]
In his brief, the Debtor argued that his rights to pension plan payments and Social Security benefits were property of the estate "as to the IRS, since the IRS liens [we]re effective against all property pursuant to 26 U.S.C. [§] 6321." As the pension income and Social Security payments were property of the estate, the Debtor contended, the bankruptcy court had subject matter jurisdiction to determine the value of the IRS liens pursuant to § 506(a). For the same reasons, the Debtor argued, § 106(a)(1) abrogated any sovereign immunity defense by the IRS, as a governmental entity.
C. The Bankruptcy Court's Ruling
Following submission of these briefs by the parties, the court held a hearing on January 10, 2018. At that hearing, the bankruptcy court concluded as follows: (1) the Debtor's interest in the pension payments was the right to future income and, as such, was not property of the estate; (2) the bankruptcy court, therefore, did not have "subject matter jurisdiction to value the [D]ebtor's rights to future pension [payments]"; and (3) the IRS's sovereign immunity was not "abrogated" under § 106 as nothing contained within that section "allows the [c]ourt to value collateral that is not the property of the estate[ ]."
D. The Appeal
On January 24, 2018, the Debtor filed a notice of appeal with respect to the Order. Upon the Debtor's request, the bankruptcy court issued an order certifying the Order for a direct appeal to the United States Court of Appeals for the First Circuit (the "First Circuit"). Thereafter, the Debtor filed with the First Circuit a petition for permission to take a direct appeal to that court. On June 26, 2018, the First Circuit issued a Judgment in which it denied the petition for a direct appeal.
On July 24, 2018, the Panel entered an Order to Show Cause directing the Debtor to demonstrate why this appeal should not be dismissed for lack of jurisdiction as an order sustaining a creditor's objection to plan confirmation, without confirming a plan or dismissing the case, is not a final, appealable order. The Debtor filed a response to the Order to Show Cause, arguing that the Order is a final, appealable order. According to the Debtor, the ruling on appeal "is not simply the sustaining of the Appellee's objection to confirmation of the Debtor's Chapter 13 Plan." Rather, the Debtor asserts, he is appealing the bankruptcy court's rulings that: (1) his pension *406 benefits are not property of the estate; (2) that the court did not have subject matter jurisdiction to value the IRS's liens on his pension benefits pursuant to § 506(a); and (3) that the IRS's sovereign immunity was not waived pursuant to § 106(a)(1). These questions of law, the Debtor maintains, are "discrete disputes" relating to the value of the IRS's secured claim that are "immediately appealable." In the alternative, the Debtor asserts, leave to appeal is warranted under 28 U.S.C. § 158(a)(3) and Bankruptcy Rule 8004(d) because all of the requirements for discretionary interlocutory appeal are met-(1) the Order involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion, and (3) an immediate appeal will materially advance the ultimate termination of the litigation.[4]
Although not required to by the terms of the Order to Show Cause, the IRS also filed a response to the Order to Show Cause, acknowledging that the Order is interlocutory because: (1) the bankruptcy court has not made a final determination regarding the valuation of its claim; and (2) the valuation issue before the court was not raised by "a free-standing [Bankruptcy] Rule 3012 motion or raised as part of a claim objection and instead was one component or claim within the plan confirmation process."[5] Nonetheless, the IRS also urges the Panel to grant leave to appeal because "[t]he issue is purely legal and jurisdictional and quite separate and different from the remaining valuation issue," and the "legal issue is novel and important as it could recur." Moreover, the IRS contends, an immediate appeal "will facilitate the ultimate termination of the proceedings since waiting until after confirmation may require starting the plan process all over again after an appeal from a final order."
DISCUSSION
I. Final Orders: Appealable as of Right
"Pursuant to 28 U.S.C. §§ 158(a) and (b), the Panel may hear appeals from 'final judgments, orders, and decrees,' ... or 'with leave of the court, from interlocutory orders and decrees[.]" Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.), 218 B.R. 643, 645 (1st Cir. BAP 1998) ; see also Bullard v. Blue Hills Bank, --- U.S. ----, 135 S.Ct. 1686, 1692, 1695, 191 L.Ed.2d 621 (2015) (discussing the Panel's jurisdiction to hear bankruptcy appeals under 28 U.S.C. § 158(a) ).
"A decision is final if it ends the li[ti]gation on the merits and leaves nothing for the court to do but execute the judgment." In re Bank of New Eng. Corp., 218 B.R. at 646 (citations omitted) (internal quotations omitted). As the Supreme Court stated, "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." Bullard, 135 S.Ct. at 1692 (citation omitted) (internal quotation omitted); see also Morse v. Rudler (In re Rudler), 576 F.3d 37, 43 (1st Cir. 2009) (stating *407 that to be final, "a bankruptcy order need not resolve all of the issues in the proceeding, but it must finally dispose of all the issues pertaining to a discrete dispute within the larger proceeding") (citation omitted). In contrast, an interlocutory order "only decides some intervening matter pertaining to the cause, and [ ] requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." In re Bank of New Eng. Corp., 218 B.R. at 646 (citations omitted) (internal quotations omitted).
In the Order to Show Cause, the Panel observed that the U.S. Supreme Court has ruled that an order denying or withholding confirmation of a plan of reorganization is not a final order which is appealable as of right because such an order does not conclude the "confirmation process." Bullard, 135 S.Ct. at 1693. The Supreme Court reasoned that, in the context of chapter 13 plans:
The relevant proceeding is the process of attempting to arrive at an approved plan that would allow the bankruptcy to move forward. This is so, first and foremost, because only plan confirmation-or case dismissal-alters the status quo and fixes the rights and obligations of the parties. When the bankruptcy court confirms a plan, its terms become binding on debtor and creditor alike. 11 U.S.C. § 1327(a). Confirmation has preclusive effect, foreclosing relitigation of "any issue actually litigated by the parties and any issue necessarily determined by the confirmation order."
....
Denial of confirmation with leave to amend, by contrast, changes little. The automatic stay persists. The parties' rights and obligations remain unsettled. The trustee continues to collect funds from the debtor in anticipation of a different plan's eventual confirmation. The possibility of discharge lives on. "Final" does not describe this state of affairs. An order denying confirmation does rule out the specific arrangement of relief embodied in a particular plan. But that alone does not make the denial final ....
Id. at 1692-93 (citations omitted).
The Supreme Court acknowledged that sometimes "a question will be important enough that it should be addressed immediately." Id. at 1695. Indeed, the Court noted that the issue in Bullard"could well fit the bill" because it "presented a pure question of law that had divided bankruptcy courts in the First Circuit and would make a substantial financial difference to the parties." Id. But, the Court stated, "neither the significance of the issue nor its purely legal nature warranted a more flexible finality standard; the availability of interlocutory review, such as that provided under § 158(d)(2) and § 1292, was sufficient to address this concern." Gugliuzza v. Fed. Trade Comm'n (In re Gugliuzza), 852 F.3d 884, 893 (9th Cir. 2017) (citing Bullard, 135 S.Ct. at 1695 ).
Although the Debtor, during the course of the proceedings below, acknowledged that the Order is interlocutory, he now attempts to characterize it as final.[6] The Debtor argues that the ruling on appeal "is not simply the sustaining of the Appellee's objection to confirmation of the Debtor's Chapter 13 Plan." Rather, the Debtor asserts, he is appealing the bankruptcy court's rulings that: (1) his pension benefits are not property of the estate; (2) that the court did not have subject matter jurisdiction *408 to value the IRS's liens on his pension benefits pursuant to § 506(a); and (3) that the IRS's sovereign immunity was not waived pursuant to § 106(a)(1). These questions of law, the Debtor maintains, are "discrete disputes" regarding the IRS's secured claim that are "immediately appealable." According to the Debtor, the "proceeding here was not the process of attempting to confirm the Debtor's Chapter 13 Plan ...." Instead, "the proceeding ... concerned the discrete legal issues that the [b]ankruptcy [c]ourt asked the parties to brief" and the bankruptcy court's "resolution of those questions of law ... satisfies the finality requirement[.]" The Debtor does not address Bullard or make any attempt to distinguish this case from Bullard by citing other legal support for his claim of finality.
Mindful of the Supreme Court's guidance in Bullard, the Panel concludes that the Order is not a final, appealable order. Although the Order may have resolved certain legal issues-namely, whether the Debtor's interest in his pension benefits was property of the estate, whether the court had subject matter jurisdiction to value the IRS's liens on his pension benefits pursuant to § 506(a), and whether the IRS's sovereign immunity was waived pursuant to § 106(a)(1) -it did not conclusively resolve the entire dispute between the parties. These determinations are, instead, steps along the way toward a final disposition. The bankruptcy court did not make a determination under § 506(a), nor did it finally adjudicate the value of the IRS's claim. The valuation issue before the court was neither raised by a Bankruptcy Rule 3012 motion nor raised as part of a claim objection. Rather, it was one component or claim within the plan confirmation process. Thus, more remains to be done, both with respect to the valuation of the IRS's claim, and with respect to plan confirmation.
Consequently, the Order is not appealable as of right, and the appropriate inquiry is whether there is a basis to accept jurisdiction over this interlocutory appeal. Leave to appeal may issue if the appeal satisfies the § 158(a)(3) criteria governing review of interlocutory orders.
II. Interlocutory Orders: Appealable with Leave
The Panel has discretionary authority to grant leave to appeal from certain interlocutory orders pursuant to § 158(a)(3). That statute provides: "The district courts of the United States shall have jurisdiction to hear appeals ... with leave of the court, from other interlocutory orders and decrees[.]" 28 U.S.C. § 158(a)(3).[7] Although § 158(a)(3) establishes the Panel's jurisdiction to hear appeals of interlocutory bankruptcy court orders, "it does not set forth standards or criteria for deciding when that jurisdiction should be exercised." Canadian Pac. Ry. Co. v. Keach, 1:17-cv-00278-JDL, 2017 WL 4845733, at *3 (D. Me. Oct. 26, 2017) (citing In re Bank of New Eng. Corp., 218 B.R. at 652 ). Courts have therefore turned, by analogy, "to the analysis used under ... § 1292(b) [ ], the statute governing ... interlocutory appeals from orders of the district courts to the circuit courts of appeal." Id. (citing In re Bank of New Eng. Corp., 218 B.R. at 652 ); see also Rodriguez-Borges v. Lugo-Mender, 938 F.Supp.2d 202, 212 (D.P.R. 2013) ;
*409 Nickless v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (In re Advanced RISC Corp.), 317 B.R. 455, 456 (D. Mass. 2004) (considering § 1292(b) factors); JBI v. Dirs. & Officers of JBI (In re Jackson Brook Inst., Inc.), 280 B.R. 1, 4 (D. Me. 2002) (same); Ne. Sav., F.A. v. Geremia (In re Kalian), 191 B.R. 275, 277 (D.R.I. 1996) (same). The basis for the § 1292(b) analogy is found in § 158(c)(2)'s directive that an appeal from a bankruptcy court order "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts ...." 28 U.S.C. § 158(c)(2) ; see also First Owners' Ass'n of Forty Six Hundred v. Gordon Props., LLC, 470 B.R. 364, 371 (E.D. Va. 2012). Accordingly, "the § 1292(b) criteria provide appropriate guidance for (and limitation of) our exercises of discretionary jurisdiction under § 158(a)(3)." In re Bank of New Eng. Corp., 218 B.R. at 652 (footnote omitted).
" Section 1292(b) permits appellate review of 'certain interlocutory orders, decrees and judgments ... to allow appeals from orders other than final judgments when they have a final and irreparable effect on the rights of the parties.' " Id. at 652 n.17 (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) ). The First Circuit has stated that leave to appeal "should be used sparingly and only in exceptional circumstances[.]" In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1010 n.1 (1st Cir. 1988) (citation omitted) (internal quotations omitted).
When determining whether to exercise its discretion to review an interlocutory appeal, the Panel considers the following § 1292(b) factors: (1) whether the order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) whether an immediate appeal from the order might materially advance the ultimate termination of the litigation.[8] Bank of New Eng. Corp., 218 B.R. at 652 ; see also In re Advanced RISC Corp., 317 B.R. at 456. The party seeking the interlocutory appeal-here, the Debtor-has the burden of establishing all three elements. WM Capital Partners 53, LLC v. Allied Fin., Inc., No. 17-2015 (ADC), 2018 WL 1704474, at *2 (D.P.R. Mar. 30, 2018) (citations omitted). We address each element in turn.
A. Controlling Question of Law
A "controlling issue of law" is one where the issue on appeal effectively controls the outcome of the case. See HSBC Bank USA v. Handel (In re Handel), 240 B.R. 798, 801 n.5 (1st Cir. BAP 1999). "If a party can be successful on alternative grounds or asserted theories that are not controlled by a question of law, then the question asserted is not controlling." Canadian Pac. Ry. Co., 2017 WL 4845733, at *3-4, 2017 U.S. Dist. LEXIS 177452, at *8 (D. Me. Oct. 26, 2017) (citing Jackson Brook, 280 B.R. at 5 ). Moreover, a question of law may be controlling "if reversal on interlocutory appeal might save *410 time for the district court, and time and expense for the litigants." Id. (citations omitted) (internal quotations omitted).
The legal issue presented in this case is whether the Debtor's interest in future pension payments is property of the estate as to the IRS such that it can form the basis for the IRS's secured claim under § 506(a). The bankruptcy court's rulings that it lacked subject matter jurisdiction to value the Debtor's interest in future pension income under § 506(a), and that there was no statutory waiver of sovereign immunity under § 106, stemmed directly from its legal conclusion that the Debtor's interests in future pension and Social Security payments are not property of the estate. Therefore, the legal question of whether the Debtor's interest in future pension payments is property of the estate is controlling in this case because it determines the bankruptcy court's jurisdiction to value the Debtor's interest in future pension income for § 506(a) purposes.
Therefore, the first § 1292(b) factor for an interlocutory appeal is satisfied, and our analysis advances to the second prong.
B. Substantial Ground for Difference of Opinion
To warrant interlocutory review, the order on appeal must also involve a legal issue on which there is a substantial ground for difference of opinion. It is well established in the First Circuit that a substantial ground for difference of opinion occurs only in "rare cases" where an interlocutory appeal presents one or more " 'difficult and pivotal questions of law not settled by controlling authority.' " In re Bank of New Eng. Corp., 218 B.R. at 653 (quoting McGillicuddy v. Clements, 746 F.2d 76, 76 n.1 (1st Cir. 1984), and citing In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d at 1010 n.1 ); see also Caraballo-Seda v. Municipality of Hormigueros, 395 F.3d 7, 9 (1st Cir. 2005) ; Watson v. Boyajian (In re Watson), 309 B.R. 652, 660 (1st Cir. BAP 2004).
"In determining whether an interlocutory appeal is warranted, the critical issue is whether there is a substantial ground for a difference of opinion with respect to issues of law raised by the parties; it is not whether the plaintiffs disagree with the court's ruling." Hidalgo-Vélez v. San Juan Asset Mgmt., Inc., No. 11-cv-02175-SJM, 2013 WL 1089745, at *5 (D.P.R. Mar. 15, 2013), vacated on other grounds, 758 F.3d 98 (1st Cir. 2014) (citations omitted). "Even when the issue is controlling, it is rare that a substantial ground for difference of opinion exists." Huntsman Advanced Materials, LLC v. Onebeacon Am. Ins. Co., No. 08-229-E-WFD, 2010 WL 11531288, at *2 (D. Idaho Sept. 22, 2010) Thus, it is essential to understand the meaning of "substantial ground for difference of opinion" when deciding whether to permit § 1292(b) interlocutory review. In the absence of a statutory definition of this phrase, decisional law from within this circuit provides guidance regarding the parameters of a "substantial ground for difference of opinion." For example, in Caraballo-Seda, the First Circuit found no substantial ground for difference of opinion where there were two district court opinions with similar holdings on the controlling issue. 395 F.3d at 9. In another case, a Massachusetts district court denied interlocutory review where there was no "blazing split" among the circuits on the controlling issue and the party seeking review was relying on a "controversial twenty-five year old opinion." In re Lupron Mktg. & Sales Practices Litig., 313 F.Supp.2d 8, 12 (D. Mass. 2004) (internal quotations omitted). Similarly, in *411 Kehoe v. Smolar, No. 73-1506-MA, 1982 WL 1574, at *2 (D. Mass. Mar. 3, 1982), a Massachusetts district court found that a substantial ground for difference of opinion was absent, reasoning in part that the circuits were not "badly split." On the other hand, some courts have ruled that a "substantial ground for difference of opinion" existed in situations where: (1) "case law to date demonstrate[d] marked litigant confusion and disagreement," Natale v. Pfizer, Inc., 379 F.Supp.2d 161, 182 (D. Mass. 2005) ; (2) there was "stark division among the [ ] circuits," Canty v. Old Rochester Reg'l Sch. Dist., 54 F.Supp.2d 66, 77 (D. Mass. 1999) ; or (3) the circuits were split and the court followed the minority view, Rodriquez v. Banco Cent., 917 F.2d 664, 665 (1st Cir. 1990). As one commentator noted, "[l]ack of circuit decisional law, together with 'confusion' in other decisions in other cases or circuits, has been found to provide the necessary substantial grounds for difference of opinion." Tory Weigand, Discretionary Interlocutory Appeals Under 28 U.S.C. § 1292(b) : A First Circuit Survey and Review, Roger Williams U.L. Rev., Winter 2014, at 207 & n.131, 132 (citing among others, Philip Morris, Inc. v. Harshbarger, 957 F.Supp. 327, 330 (D. Mass. 1997) (stating issue was not resolved by any directly controlling authority); Cabral v. Sullivan, 757 F.Supp. 107, 111 (D. Mass. 1991) (noting issue was matter of first impression in the circuit); Miara v. First Allmerica Fin. Life Ins. Co., 379 F.Supp.2d 20, 48 (D. Mass. 2005) ).
Here, the Debtor argues that there is a substantial ground for difference of opinion because courts have rendered differing views as to "whether retirement benefits, such as the Debtor's pension benefits at issue in the instant case, constitute property of the estate with regard to IRS tax liens[.]" Moreover, the Debtor maintains, "neither the Supreme Court nor the First Circuit ha[ve] definitely addressed the questions of law at issue in this appeal." According to the Debtor, "[t]he lack of controlling precedent in this Circuit ... all but ensures that this controversy will arise again in future bankruptcy cases."
The Debtor correctly asserts that previously there was division among the courts on the controlling issue of whether a debtor's interest in an ERISA-qualified pension plan was property of the estate. In 1992, the Supreme Court, in Patterson v. Shumate, 504 U.S. 753, 765, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), ruled that a debtor's interest in an ERISA-qualified plan is excluded from the bankruptcy estate pursuant to § 541(c)(2). In reaching that conclusion, the Supreme Court stated that the anti-alienation restriction in an ERISA-qualified plan is a "restriction on the transfer of a beneficial interest of the debtor in a trust," which is enforceable under "applicable nonbankruptcy law" for purposes of § 541(c)(2) and, therefore, a debtor's interest in such a plan is not property of the estate. Id. at 760, 112 S.Ct. 2242.
After Patterson, courts were split on the issue of whether a debtor's interest in an ERISA-qualified pension plan should be treated as property of the bankruptcy estate for the limited purpose of securing the IRS's claim. Some courts held that, while a debtor's interest in a pension plan is not reachable by private creditors and therefore is not part of the bankruptcy estate as to those creditors, the debtor's interest should be considered part of the estate for the sole purpose of securing a federal tax claim. See, e.g., In re Berry, 268 B.R. 819, 825 (Bankr. E.D. Tenn. 2001) ; Jones v. IRS (In re Jones ), 206 B.R. 614, 621 (Bankr. D.D.C. 1997) ; In re Lyons, 148 B.R. 88, 93 (Bankr. D.D.C. 1992). These courts reasoned that, because an anti-alienation provision in a pension plan is ineffective against the IRS outside of bankruptcy, a debtor's interest in such a plan is not excluded from the estate as to the IRS and can form the basis for the *412 IRS's secured claim. Under this approach, a debtor's interest in a pension plan "would in effect have a split personality by remaining property of the estate for purposes of federal tax claims even though it is not property of the estate for purposes of other creditors' claims." In re Jones, 206 B.R. at 621.
Other courts rejected the so-called "split personality" characterization and held that a chapter 13 debtor's interest in a pension plan cannot secure the claims of the IRS. See, e.g., IRS v. Wingfield (In re Wingfield), 284 B.R. 787, 790 (E.D. Va. 2002) ; Persky v. United States (In re Persky), No. Civ. A. 98-2729, 1998 WL 695311, at *6 (E.D. Pa. Oct. 5, 1998) ; In re Keyes, 255 B.R. 819, 822 (Bankr. E.D. Va. 2000) ; In re Wilson, 206 B.R. 808, 810 (Bankr. W.D.N.C. 1996). A number of these courts reasoned that, "[w]hile it is clear that an asset of the debtor is subject to the IRS lien as provided for by statute, there is simply no statutory authority for granting it a 'split personality' to include it in the bankruptcy estate simply for purposes of securing the IRS's lien." In re Keyes, 255 B.R. at 822 ; see also In re Wingfield, 284 B.R. at 790 (citing In re Keyes, supra ). According to these courts, the Supreme Court's ruling in Patterson is clear that ERISA-qualified plans do not become part of the bankruptcy estate under any circumstances.
The disagreement among the courts seems to have dissolved in 2003, however, when the Ninth Circuit adopted the latter approach in IRS v. Snyder, 343 F.3d 1171, 1178 (9th Cir. 2003), ruling that an anti-alienation clause in a debtor's pension plan prevented the debtor's interest in the plan from being included in the bankruptcy with respect to all creditors, including the IRS. The Snyder court noted the prior split of authority, but concluded that, because the anti-alienation clause in the debtor's ERISA plan was enforceable under nonbankruptcy law against everyone except the IRS, that was enough to prevent the debtor's interest in the plan from transferring to the bankruptcy estate as to any creditor. Id. at 1179. According to the Ninth Circuit, "looking at the specific creditor seeking secured status and asking whether the trust's anti-alienation clause would be enforceable against that creditor in particular ... misconceives the character of §§ 506(a) and 541." Id. at 1178. Section 541 describes "what property shall be included in a bankruptcy estate," not "the treatment particular creditors shall receive in the course of bankruptcy proceedings." Id."Subsection (2) carves out an exception to § 541(a)(1) and (c)(1). It provides that trust anti-alienation provisions otherwise enforceable under nonbankruptcy law will operate in a bankruptcy case to prevent the transfer of the debtor's interest in the trust to the bankruptcy estate." Id."The fact that the clause may be unenforceable against the IRS is neither here nor there." Id. (citation omitted). "The question is whether the anti-alienation clause prevents the transfer of the debtor's interest in the pension to the bankruptcy estate , not to the IRS, or to any other specific creditor." Id. Thus, the court concluded, because the anti-alienation clause in the debtor's ERISA plan was enforceable under nonbankruptcy law against everyone except the IRS, this prevented the transfer of the debtor's interest in the plan to the bankruptcy estate. Id. at 1178-79.
It appears that most (if not all) courts addressing the issue post- Snyder have adopted the reasoning set forth in Snyder. See, e.g., In re Richardson, 307 B.R. 485, 489-90 (Bankr. D. Md. 2004) (adopting the Snyder reasoning and ruling that "under the plain language of [§] 541(c)(2) and in accordance with the decision reached in Patterson v. Shumate, [the debtor]'s interest *413 in his ERISA-qualified pension fund was never transferred to the Debtors' bankruptcy estate" and "cannot be the basis for ... an allowed secured claim"); In re Grant, 301 B.R. 464, 467-68 (Bankr. E.D. Va. 2003) (adopting the reasoning of Snyder, and holding that the debtors' interest in their ERISA-qualified pension plans was not property of the bankruptcy estate for the purpose of establishing a secured claim by the IRS); In re Robinson, 301 B.R. 461, 463-64 (Bankr. E.D. Va. 2003) (same); accord In re Gill, No. 07-00358, 2007 WL 2990564, at *1 n.2 (Bankr. D.D.C. Oct. 11, 2007) (noting that "the holding of more recent cases ... is that the account is not property of the estate even with respect to the IRS as a creditor holding a lien on the account) (emphasis added). Significantly, the Debtor has not cited any post- Snyder authority to the contrary. Thus, although the courts were split pre- Snyder, there does not appear to be a continuing dispute amongst the courts after Snyder .
In urging the Panel to grant this interlocutory appeal, the parties point out that the First Circuit has not decided this precise issue, and that the legal issue presented is "novel and important as it could recur." This argument is unpersuasive. Simply because the First Circuit has not ruled on the question does not qualify the issue as one for which there is substantial disagreement. See Admiral Ins. Co. v. Willson (In re Cent. La. Grain Co-op, Inc.), 489 B.R. 403, 412 (W.D. La. 2013) ("Simply because a court is the first to rule on a question ... does not qualify the issue as one over which there is substantial disagreement.") (citation, internal quotations, and emphasis omitted). "[M]ere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." Flor v. Bot Fin. Corp. (In re Flor), 79 F.3d 281, 284 (2d Cir. 1996) (citations omitted); see also Lucas v. Bell Trans, 2009 WL 3336112, at *4 (D. Nev. Oct. 14, 2009) (stating whether a matter is of first impression is not controlling, where the issue is one of straightforward statutory interpretation). "If questions of first impression alone were sufficient to warrant ... an immediate appeal," courts of appeals "would be besieged with piecemeal interlocutory appeals." Shaup v. Frederickson, No. 97-7260, 1998 WL 800321, at *3 (E.D. Pa. Nov. 17, 1998). "[I]t is the duty of the district judge ... to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute." In re Flor, 79 F.3d at 284 (citation omitted) (internal quotations omitted).
Further, courts have cautioned that the "novelty" of the issue is not enough to establish a substantial ground for difference of opinion and that "the issue must relate to the actual legal principle itself, not the application of that principle to a particular set of facts." United Air Lines Inc. v. Gregory, 716 F.Supp.2d 79, 92 (D. Mass. 2010). While the First Circuit has considered the novelty of an issue as one of the factors to consider in deciding whether to accept an interlocutory appeal, novelty standing alone has not been enough. The First Circuit has also considered the importance of the issue and whether the circumstances were sufficiently out of the ordinary to satisfy the statutory prerequisites. In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d at 1010 n.1 ; Donatelli v. Nat'l Hockey League, 893 F.2d 459, 461 (1st Cir. 1990) (allowing interlocutory appeal because court was "impressed by the issue's novelty and importance"); see also Abtox Inc. v. Exitron Corp., 888 F.Supp. 6, 7 (D. Mass. 1995)
*414 (noting novelty of question plus its importance as supporting certification of interlocutory appeal). Regardless of whether the novelty of the issue presented is viewed as one of the determinants of interlocutory review, the issue in this case cannot be considered novel where it has been addressed by courts since at least 1992.
Here, although the First Circuit has yet to address the question, there is no longer a "stark" or "bad" split among the courts that have addressed the issue since 2003. Since Snyder, courts have consistently ruled that a debtor's interest in an ERISA-qualified pension fund does not constitute property of the debtor's bankruptcy estate, and cannot be the basis for establishing a secured claim by the IRS. See, e.g., In re Richardson, supra ; In re Grant, supra ; In reRobinson, supra ; In re Gill, supra. Moreover, there is circuit law on the issue (albeit not from the First Circuit) and there is no confusion amongst the courts which have more recently addressed the issue.
In light of the foregoing, the Debtor has not demonstrated that there is a "substantial ground for difference of opinion." As the Debtor has failed to satisfy one of the three necessary § 1292(b) factors, immediate review of the Order is not warranted. Therefore, we need not consider the third factor-whether an immediate appeal will materially advance the ultimate termination of the litigation. See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, (In re Madoff), No. 17-CV-2959 (VEC), 2017 WL 4417701, at *3 n.5 (S.D.N.Y. Oct. 3, 2017) (stating that because the § 1292(b) factors are "conjunctive," where one factor is not satisfied, the court did not need to address the other factors).
CONCLUSION
Having concluded that the Order is interlocutory and that the Debtor has not satisfied the § 1292(b) criteria, the Panel declines to exercise its discretion to consider this appeal under § 158(a)(3).[9] Therefore, this appeal is DISMISSED.

Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

Section 506(a) provides, in relevant part, that: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ...." 11 U.S.C. § 541(a) (emphasis added). Essentially, § 506(a) authorizes the court to value property only to the extent it is property of the bankruptcy estate.

Section 106(a) provides: "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to ... [among other sections] 506[.]" 11 U.S.C. § 106(a).

As discussed later, 28 U.S.C. § 158(a)(3) establishes the Panel's jurisdiction to hear appeals of interlocutory bankruptcy court orders, and Bankruptcy Rule 8004(d) provides that the Panel may treat a notice of appeal as a motion for leave to appeal. The three-prong test articulated by the Debtor stems from 28 U.S.C. § 1292(b), which is the statute governing interlocutory appeals from orders of the district courts to the circuit courts of appeal. The Panel generally applies this three-prong test when determining whether to exercise its discretion to hear an interlocutory appeal.

Bankruptcy Rule 3012(b) provides, in relevant part: "[A] request to determine the amount of a secured claim may be made by motion, in a claim objection, or in a plan filed in a ... chapter 13 case." Fed. R. Bankr. P. 3012(b).

For example, after the bankruptcy court issued its ruling, the Debtor's counsel indicated that he was unsure whether the Debtor would appeal, but stated, "[i]f so, we can file a motion for interlocutory appeal." (emphasis added).

A limited set of interlocutory orders issued by bankruptcy judges are immediately appealable as of right, without leave. See 28 U.S.C. § 158(a)(2). Section 158(a)(2) addresses orders related to the exclusivity periods under 11 U.S.C. § 1121(d). That statute is not implicated here.

Some courts note an additional element to the interlocutory appeal analysis, the existence of "exceptional circumstances." See, e.g., State Ins. Fund Corp. v. Medsci Diagnostics, Inc., No. 10-2239 (JAF), 2012 WL 827116, at *3 (D.P.R. Mar. 9, 2012) (denying leave to appeal because elements of § 1292(b) were not met, and because the case presented "no exceptional circumstances that would merit [ ] a grant of leave [to appeal]"); Foreign Car Ctr. v. Salem Suede, Inc. (In re Salem Suede, Inc.), 221 B.R. 586, 599 (D. Mass. 1998) (considering whether there was an "exceptional condition or consideration" that the court "should take into account in deciding whether to assert its discretionary jurisdiction"); IBI Sec. Serv., Inc. v. Nat'l Westminster Bank USA (In re IBI Sec. Serv., Inc.), 174 B.R. 664, 669-71 (E.D.N.Y. 1994).

Although the collateral order doctrine also permits discretionary review of interlocutory orders, the Debtor has not argued any of the factors required under that doctrine. To be appealable under the collateral order doctrine, the order must: "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment [on the remaining counts]." U.S. Fid. & Guar. Co. v. Arch Ins. Co., 578 F.3d 45, 55 (1st Cir. 2009) (quoting Will v. Hallock, 546 U.S. 345, 349, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006) ). Nor has the Debtor argued that interlocutory review is warranted under the Forgay-Conrad doctrine, which "bestow[s] appellate jurisdiction over interlocutory orders when 'irreparable injury' to the aggrieved party may attend delaying appellate review until the litigation is over." In re Bank of New Eng. Corp., 218 B.R. at 649 n.8 (citation omitted). We, therefore, decline to exercise jurisdiction under either doctrine.